## No. 23-15602

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GUAM SOCIETY OF OBSTETRICIANS AND GYNECOLOGISTS, ET AL.,
*Plaintiffs-Appellees*

v.

DOUGLAS MOYLAN,
*Defendant-Appellant*

v.

LOURDES LEON GUERRERO,
*Defendants-Appellees.*

On Appeal from the United States District Court for the
District of Guam, No. 1:90-cv-13 (Tydingco-Gatewood, J.)

## APPELLANT'S OPENING BRIEF

Douglas B. Moylan
Attorney General of Guam
OFFICE OF THE ATTORNEY GENERAL
OF GUAM
590 S. Marine Corps Drive
Suite 901
Tamuning, GU 96913
(671) 475-3324
dbmoylan@oagguam.org

Tyler R. Green*
CONSOVOY MCCARTHY PLLC
222 S. Main Street
5th Floor
Salt Lake City, UT 84101
(703) 243-9423
tyler@consovoymccarthy.com

Gilbert C. Dickey
Kathleen L. Smithgall
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
gilbert@consovoymccarthy.com
katie@consovoymccarthy.com

August 28, 2023

*Counsel for Defendant-Appellant*
*application for admission forthcoming

# TABLE OF CONTENTS

Introduction ..................................................................................................1

Jurisdictional Statement................................................................................2

Statement of the Issue ..................................................................................2

Statement of the Case ..................................................................................3

I.  Public Law 20-134 bans most abortions in the Territory of Guam. .........................3

II.  In 1990, the district court permanently enjoined P.L. 20-134—and this Court affirmed that injunction in 1992—based solely on *Roe*. ...............................5

III.  After *Dobbs* overruled *Roe*, Guam's Attorney General moves to vacate the 1990 permanent injunction under Rule 60(b)..................................................7

Summary of Argument ................................................................................12

Standard of Review ....................................................................................14

Argument ....................................................................................................14

I.  The 1990 permanent injunction against P.L. 20-134 must be vacated under Rule 60(b)(5)...........................................................................................14

    A.  Because the 1990 permanent injunction was based solely on *Roe* and *Roe* is no longer good law, the district court necessarily abused its discretion by denying the Attorney General's Rule 60(b) motion. ....................................15

    B.  The district court's refusal to vacate the 1990 injunction directly conflicts with similar post-*Dobbs* decisions...........................................................20

    C.  The district court's order denying the Attorney General's Rule 60(b) motion also rests on two separate errors of law. ....................................22

II.  There are no grounds to affirm the district court's order denying Rule 60(b) relief. ....................................................................................................28

    A.  Arguments opposing a Rule 60(b) motion—but not responsive to the Rule 60(b) standard—cannot defeat that motion.......................................29

    B.  Public Law 20-134 was not void a*b initio*. ..................................32

    C.  Public Law 20-134 has not been repealed by implication. ...............39

        1.  Reporting Requirements ....................................................41

        2.  Partial Birth Abortion Ban ...............................................42

        3.  Parental Consent for Abortion Act....................................44

        4.  Women's Reproductive Health Information Act ...............47

Conclusion...................................................................................................48

## TABLE OF AUTHORITIES

### Cases

*Agostini v. Felton,*
  521 U.S. 203 (1997) ...................................................................passim

*Ahanchian v. Xenon Pictures, Inc.,*
  624 F.3d 1253 (9th Cir. 2010) ....................................................14

*Am. Games, Inc. v. Trade Prods., Inc.,*
  142 F.3d 1164 (9th Cir. 1988) ....................................................24

*Barsky v. Bd. of Regents of Univ. of N.Y.,*
  347 U.S. 442 (1954) ....................................................................48

*Bateman v. U.S. Postal Serv.,*
  231 F.3d 1220 (9th Cir. 2000) ....................................................24

*Bernard v. Indiv. Members of Ind. Med. Licensing Bd.,*
  1:19-cv-1660, 2023 WL 2742321 (S.D. Ind. Mar. 31, 2023) .......................21

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.,*
  490 F.3d 718 (9th Cir. 2007) ......................................................32

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) ....................................................................27

*Bryant v. Woodall,*
  622 F.Supp.3d 147 (M.D.N.C. 2022) ............................................22

*California Department of Social Services v. Leavitt,*
  523 F.3d 1025 (9th Cir. 2008) ....................................................17

*California ex rel. Becerra v. EPA,*
  978 F.3d 708 (9th Cir. 2020) ................................................passim

*Close v. Sotheby's,*
  909 F.3d 1204 (9th Cir. 2018) ....................................................37

*Dobbs v. Jackson Women's Health Organization,*
  142 S.Ct. 2228 (2022) ......................................................passim

*EMW Women's Surgical Ctr. P.S.C. v. Cameron,*
  3:18-cv-224, 2022 WL 19560712 (W.D. Ky. Aug. 17, 2022) .......................22

*Gonzales v. Carhart,*
  550 U.S. 124 (2007) ....................................................................44

*Guam Soc'y of Obstetricians and Gynecologists v. Ada*,
  100 F.3d 691, 706 (9th Cir. 1996) ........................................................... 7

*Guam Soc'y of Obstetricians and Gynecologists v. Ada*,
  776 F. Supp. 1422, 1426 (D. Guam 1990) .............................................. passim

*Guam Soc'y of Obstetricians and Gynecologists v. Ada*,
  962 F.2d 1366 (9th Cir. 1992) ........................................... 7, 16, 23, 34

*Guam v. Guerrero*,
  290 F.3d 1210 (9th Cir. 2002) ............................................................ 34, 35

*Guam v. Quinata*,
  CR-81-0004A, 1982 WL 30546 (D. Guam 1982) ................................... 40

*Horne v. Flores*,
  557 U.S. 433 (2009) .......................................................................... 15, 23

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*,
  534 U.S. 124 (2001) .................................................................... 40, 42, 46

*Jeff D. v. Kempthorne*,
  365 F.3d 844 (9th Cir. 2004) .............................................................. passim

*June Med. Servs. LLC v. La. Dep't of Health*,
  14-525, 2022 WL 16924100 (M.D. La. Nov. 14, 2022) .......................... 22

*Kentucky Association of Health Plans v. Miller*,
  538 U.S. 329 (2003) ............................................................................. 19

*King v. Blue Cross & Blue Shield of Ill.*,
  871 F.3d 730 (9th Cir. 2017) ............................................................... 43

*Ledezma-Galicia v. Holder*,
  636 F.3d 1059 (9th Cir. 2010) ......................................................... 41, 43

*Lemoge v. United States*,
  587 F.3d 1188 (9th Cir. 2009) ............................................................. 24

*Little Rock Family Planning Servs. v. Jegley*,
  21-2857 (8th Cir. July 26, 2022) ......................................................... 21

*Little Rock Family Planning Servs. v. Jegley*,
  549 F. Supp. 3d 922 (E.D. Ark. 2021) ................................................. 37

*Marbury v. Madison*,
  1 Cranch (5 U.S.) 137 (1803) ............................................................. 37

*Matsushita Electric Indus. Co. v. Epstein*,
  516 U.S. 367 (1996) ............................................................................ 40

iv

*McQuillion v. Schwarzenegger,*
 369 F.3d 1091 (9th Cir. 2004)........................................................................30

*Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Hawai'i, Alaska, Indiana, Kentucky, Inc.,*
 211 N.E.3d 957 (Ind. 2023) ..........................................................................21

*Memphis Ctr. for Reproductive Health v. Slatery,*
 No. 20-5969, 2022 WL 2570275 (6th Cir. June 28, 2022) ..........................21

*Metropolis Theater Co. v. City of Chicago,*
 228 U.S. 61 (1913) ........................................................................................38

*Morton v. Mancari,*
 417 U.S. 535 (1974) ......................................................................39, 43, 46

*Pennsylvania v. Wheeling & Belmont Bridge Co.,*
 59 U.S. 421 (1855) ..................................................................................17, 18

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*
 505 U.S. 833 (1992) ........................................................................................8

*Planned Parenthood S. Atlantic v. Wilson,*
 3:21-00508, 2022 WL 2905496 (D.S.C. July 22, 2022) ...............................21

*Posadas v. Nat'l City Bank of New York,*
 296 U.S. 497 (1936) ................................................................................39, 40

*Preterm-Cleveland v. Yost,*
 1:19-cv-360, 2022 WL 2290526 (S.D. Ohio June 24, 2022) .......................21

*Prudential Ins. Co. v. Nat'l Park Med. Ctr., Inc.,*
 154 F.3d 812 (8th Cir. 1998) ........................................................................19

*Prudential Insurance Company v. National Park Medical Center, Inc.,*
 413 F.3d 897 (8th Cir. 2005) ........................................................................19

*Pugh v. United States,*
 212 F.2d 761 (9th Cir. 1954) ........................................................................34

*R.R. Comm'n of Tex. v. Pullman Co.,*
 312 U.S. 496 (1941) ........................................................................................8

*Radzanower v. Touche Ross & Co.,* 426 U.S. 148
 (1976)..................................................................................................39, 42, 46

*Raidoo v. Moylan,*
 75 F.4th 1115 (9th Cir. 2023) ................................................................passim

*Randolph v. IMBS, Inc.,*
 368 F.3d 726 (7th Cir. 2004) ........................................................................43

*Robinson v. Marshall,*
   2:29-cv-365, 2022 WL 2314402 (M.D. Ala. June 24, 2022) ........................................21

*Roe v. Wade,*
   410 U.S. 113 (1973) ............................................................................................1

*Silveira v. Lockyer,*
   312 F.3d 1052 (9th Cir. 2003) ........................................................................38

*Sistersong Women of Color Reproductive Justice Collective v. Carr,*
   40 F.4th 1320 (11th Cir. 2022) ........................................................................22

*Sumitomo Const., Co., Ltd. v. Guam,*
   CVA00-019, CVA00-006, 2001 WL 1360135 (Guam Nov. 7, 2001) ........................40

*Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright,*
   364 U.S. 642 (1961) ..........................................................................................17

*Toussaint v. McCarthy,*
   801 F.2d 1080 (9th Cir. 1986) ........................................................................17

*Traynor v. Turnage,*
   485 U.S. 535 (1988) ..........................................................................................41

*United Nat. Ins. Co. v. R & D Latex Corp.,*
   141 F.3d 916 (9th Cir. 1998) ..........................................................................32

*United States v. Batchelder,*
   442 U.S. 114 (1979) ..........................................................................................46

*United States v. Borden Co.,*
   308 U.S. 188 (1939) ..........................................................................................47

*United States v. Hansen,*
   143 S.Ct. 1932 (2023) ......................................................................................27

*United States v. Taylor,*
   487 U.S. 326 (1988) ..........................................................................................25

*United States v. Williams,*
   553 U.S. 285 (2008) ..........................................................................................27

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ..........................................................................................48

*Webster v. Reproductive Health Services,*
   492 U.S. 490 (1989) ............................................................................................3

*Whole Woman's Health v. Jackson,*
   142 S. Ct. 522 (2021) ......................................................................................37

*Whole Woman's Health v. Young*,
    37 F.4th 1098 (5th Cir. 2022) ...................................................22

*Wood v. United States*,
    41 U.S. 342 (1842) ...................................................... 40, 43

**Statutes**

28 U.S.C. §1291 ...........................................................................2

48 U.S.C. §1421b(u) ..................................................................34

48 U.S.C. §1423a .......................................................................33

5 GCA §30101 .............................................................................6

10 GCA §91A103 .......................................................................42

10 GCA §3218 ............................................................................42

10 GCA §3218.1 .........................................................................47

10 GCA §91A110 ................................................................. 43, 44

10 GCA §4A107 .........................................................................45

19 GCA §4A101 .........................................................................44

19 GCA §4A102 .........................................................................45

19 GCA §4A104 ................................................................... 45, 46

Miss. Code Ann. §41-41-191 ....................................................36

**State and Territorial Laws**

Guam P.L. 20-134 ...............................................................passim

Guam P.L. 22-130 .............................................................. 41, 42

S.B. 6, 93d Gen. Assemb. Reg. Sess. §1 (Ark. 2021)................37

**Federal Rules**

Fed. R. App. 4(a)(1 .....................................................................2

Federal Rule of Civil Procedure Rule 60(b) ......................... 1, 15

## INTRODUCTION

"[T]he strict legal issue before the Court is not one difficult of resolution: Is *Roe v. Wade*[, 410 U.S. 113 (1973),] the law in the Territory of Guam?" *Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 776 F. Supp. 1422, 1426 (D. Guam 1990).

In 1990, the district court answered that question "yes." *Id.* Then, based solely on *Roe*, the district court permanently enjoined Public Law 20-134, which (with limited exceptions) outlawed performing abortion and soliciting abortion in Guam.

Today, however, the answer unequivocally is "no." For "[i]n *Dobbs v. Jackson Women's Health Organization*, [142 S.Ct. 2228 (2022),] the Supreme Court made clear that the Constitution does not guarantee a right to an abortion because it is neither enumerated in the constitutional text nor deeply rooted in our nation's history." *Raidoo v. Moylan*, 75 F.4th 1115, 1118 (9th Cir. 2023).

Because *Roe* is no longer the law in Guam—or anywhere—the district court's injunction has no basis in law or equity. These are paradigmatic circumstances for obtaining relief under Federal Rule of Civil Procedure Rule 60(b); as this Court recently held, "when a district court reviews an injunction based solely on law that has since been altered to permit what was previously forbidden, it is an abuse of discretion to refuse to modify the injunction in the light of the changed law." *California ex rel. Becerra v. EPA*, 978 F.3d 708, 718-19 (9th Cir. 2020). Thus, the Guam Attorney General filed a Rule 60(b)(5) motion to vacate the 1990 permanent injunction.

But despite *Dobbs*'s wholesale rejection of *Roe*, the district court denied the Attorney General's Rule 60(b) motion and left the 1990 permanent injunction in place. That outcome cannot be reconciled with *California*. Nor is it plausibly correct under any fair reading of Rule 60(b). This Court should reverse the district court's order and vacate the 1990 injunction.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the action below based on 28 U.S.C. §1331. Following a written opinion issued on August 23, 1990, enjoining P.L. 20-134, the district court issued a final judgment and permanent injunction on September 13, 1990, and an amended judgment on October 16, 1990. *See Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 776 F. Supp. 1422 (D. Guam 1990).

On February 1, 2023, Appellant Douglas Moylan, the Attorney General of Guam, moved under Federal Rule of Civil Procedure 60(b)(5) to vacate that injunction. The district court denied that motion on March 24, 2023. Orders denying Rule 60(b) motions "are appealable as final orders." *Jeff D. v. Kempthorne*, 365 F.3d 844, 850 (9th Cir. 2004). The Attorney General timely appealed on April 20, 2023. Fed. R. App. 4(a)(1). This Court has jurisdiction based on 28 U.S.C. §1291. *Jeff D.*, 365 F.3d at 850.

## STATEMENT OF THE ISSUE

Whether the district court necessarily abused its discretion by refusing to vacate its 1990 permanent injunction against P.L. 20-134 under Federal Rule of Civil

Procedure 60(b) after *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228 (2022), eliminated the only legal basis for that injunction.

## STATEMENT OF THE CASE

I. **Public Law 20-134 bans most abortions in the Territory of Guam.**

The Supreme Court's 1973 decision in *Roe* provoked so much pushback throughout the country and left so many questions unanswered that follow-on abortion cases repeatedly made their way to that Court. In one such case decided in 1989, a three-Justice plurality expressed a willingness to "modify and narrow *Roe* and succeeding cases" in a proper case. *Webster v. Reproductive Health Services*, 492 U.S. 490, 521 (1989). Justice Scalia wrote separately in *Webster* to express his view that the Court should not just "effectively" overrule *Roe*, as the plurality opinion would have done, but should overrule *Roe* "more explicitly." *Id.* at 532 (Scalia, J., concurring in part and concurring in the judgment).

Based in part on those four votes in *Webster*, the Territory of Guam enacted Public Law 20-134 just one year later. That 1990 law copied a part of the Missouri law upheld in *Webster*, *see id.* at 504-07, by reciting the Guam Legislature's finding that "every human being begins at conception and that unborn children have protectible interests in life, health, and well-being." P.L. 20-134, §1.[1] Based on that finding, the Legislature prohibited any person from "[p]roviding or administering drug[s] or employing means to cause an abortion." *Id.* §3. A violation of that law constituted a third-degree felony

---

[1] P.L. 20-134 is included at 3-ER-262 for the court's convenience.

and, if applicable, would result in a disciplinary action before the Guam Medical Licensure Board. *Id.*

The Guam Legislature defined abortion as the "termination of a human pregnancy after implantation of a fertilized ovum by any person including the pregnant woman herself with an intention other than to produce a live birth or to remove a dead unborn fetus." *Id.* §2. This definition contained two specific exemptions: (1) an ectopic pregnancy or (2) when the life or health of the mother was at risk. *Id.* The second exemption required independent findings from two physicians that there was a "substantial risk" to the mother's life or that her health would otherwise be "gravely impair[ed]." *Id.* After termination, the Guam Medical Licensure Board would appoint a peer review committee to evaluate that decision. *Id.*

To further fortify those provisions, the Guam Legislature prohibited a woman from "[s]oliciting and taking drug[s] or submitting to an attempt to cause an abortion," and prohibited a physician from "soliciting to submit to operation … to cause an abortion." P.L. 20-134 §§4, 5. Under either circumstance, the person would be guilty of a misdemeanor. *Id.*

The Guam Legislature also wanted to give the people of Guam the final say on this law. It expressly stated that during the 1990 general election, Guam voters would determine whether this very law would be repealed. P.L. 20-134, §7. A majority "yes" vote by the people would repeal the law.

4

At the time, a few officials expressed their belief that the law conflicted with *Roe*. *See, e.g.*, *Ada*, 776 F. Supp. at 1425 (describing deposition of Senator Arriola's legal counsel); *id.* (describing written testimony of the Attorney General). But after concluding that life begins at conception, the Guam Legislature saw no other choice: the body *unanimously* passed P.L. 20-134. The Governor then signed it into law, stating:

> I believe a [f]etus is a human being. And having such belief, how could I accord a [f]etus any less respect or dignity than I would any other human being? Having come to this conclusion, my choice is fairly simple ….

> Believing as I do, I personally can see no honorable course for me to take, no action that I could take and still be true to my conscience other than signing this bill.

*Ada*, 776 F. Supp. at 1426. The law took effect immediately. *Id.*

## II. In 1990, the district court permanently enjoined P.L. 20-134—and this Court affirmed that injunction in 1992—based solely on *Roe*.

**A.** Almost immediately after P.L. 20-124 was passed, Plaintiffs sued to challenge it. They argued that it violated their right to privacy; was void for vagueness; violated their freedom of speech and religion; failed to provide equal protection; violated their freedom from slavery; imposed cruel and unusual punishment; denied them due process; violated the Organic Act of Guam; and violated 42 U.S.C. §1983. They named as Defendants the Governor, the Director of the Department of Public Health and Social Services, the Administrator of the Guam Memorial Hospital (GMH), the Attorney General, and individual members of the Board of Directors for the Guam

5

Election Commission.[2] Within hours, the district court issued a temporary restraining order. *Ada*, 776 F. Supp. at 1426.

As the litigation proceeded, Governor Ada repeated the same argument on behalf of all Defendants: The United States Supreme Court's substantive due process decisions do not apply to the Territory of Guam. *Ada*, 776 F. Supp. at 1427. The district court was not persuaded. It concluded that "*Roe v. Wade* applies in Guam" and that because P.L. 20-134 "fail[s] to make distinctions based on the stage of the pregnancy," it violated the Due Process Clause as interpreted in *Roe*. *Id.* at 1428-29.

The district court enjoined the law's enforcement based exclusively on *Roe* and its progeny. The district court concluded that "a right of personal privacy … does exist under the Constitution" and includes "the qualified right to obtain an abortion." *Id.* at 1428. In the district court's view, this "qualified right" announced in *Roe* permitted Guam to regulate abortion only after viability and only to further the compelling interests in a woman's health and "protecting the potentiality of human life." *Id.* Because P.L. 20-134 failed to distinguish between pre-viability and post-viability abortions, and "because the law does not recognize, as it must, any of the other constitutionally-protected interests involved," P.L. 20-134's prohibition on abortion violated the Due Process Clause as interpreted by *Roe*. *Id.* at 1429. The district court

---

[2] At the time of the lawsuit, the Guam Attorney General was appointed by the Governor and confirmed by the Legislature. This changed in 2003 when Guam amended its laws to make the Attorney General an elected, non-partisan position. 5 GCA §30101.

further concluded that P.L. 20-134's other provisions were also unconstitutional under *Roe*'s progeny. *Id.* at 1428 nn.7-8. There can be no dispute: the district court's decision rested entirely on *Roe*.

**B.** Defendants appealed to this Court, which affirmed. This Court first concluded that Sections 4 and 5—the solicitation provisions, from which Defendants did not appeal—were severable from the other provisions. *Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 962 F.2d 1366, 1368 (9th Cir. 1992). This Court then agreed with the district court's conclusion that *Roe* applied to Guam and determined that "[i]f the core of *Roe* remains good law, then, the Act is clearly unconstitutional." *Id.* at 1372. The Court then rejected Guam's arguments that intervening Supreme Court precedent had "so eroded" *Roe*, *id.*, as to justify "discard[ing] that precedent," *id.* at 1374.

Like the district court's decision, this Court's decision rested entirely on *Roe*. *See id.* at 1373 ("[I]t would be both wrong and presumptuous of us now to declare that *Roe v. Wade* is dead."); *id.* at 1374 ("It is not for this court to discard that precedent."); *Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 706 (9th Cir. 1996) (Kozinski, J., dissenting) (noting at the attorney's fees stage that Defendants' success depended on them "persuading the Supreme Court to grant certiorari and overrule *Roe*").

**III. After *Dobbs* overruled *Roe*, Guam's Attorney General moves to vacate the 1990 permanent injunction under Rule 60(b).**

**A.** On June 24, 2022, the Supreme Court issued its opinion in *Dobbs v. Jackson Women's Health Organization*, holding that "*Roe* was egregiously wrong from the start"

and overruling both *Roe* and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992). 142 S.Ct. at 2243. The Court rejected both a constitutional right to an abortion and *Casey*'s undue burden standard for evaluating abortion laws. *Id.* at 2279. After *Dobbs*, abortion laws are treated "like other health and welfare laws" and are subject to rational basis review. *Id.* at 2284; *see also Raidoo*, 75 F.4th at 1118, 1121 ("abortion laws … are generally subject only to rational basis review by the courts").

In 2023, after he took office, Appellant Douglas Moylan, the Attorney General of Guam, moved the district court under Federal Rule of Civil Procedure 60(b)(5) to vacate the 1990 permanent injunction of P.L. 20-134 in light of *Dobbs*. 3-ER-247. The Attorney General contended that *Dobbs* eliminated the only legal and equitable basis for that injunction. 2-ER-248–249. The Attorney General's motion prompted two sets of briefs raising different potential reasons for denying it. The first set asked the district court to abstain from deciding certain questions in the Attorney General's Rule 60(b) motion based on a pending Guam Supreme Court proceeding. A second set responded to the Rule 60(b) motion itself. Here, the Attorney General briefly describes each set.

**1.** First, Guam's current Governor—whose predecessor was a named defendant in the 1990s litigation and who is a member of a different political party than the former Governor—moved the district court to abstain from deciding the Attorney General's Rule 60(b) motion under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), and to stay the case. *See* 2-ER-220. The Governor contended that the district court should abstain based on *In Re: Request of Lourdes A. Leon Guerrero, I Maga'hagan Guahan, Relative*

*to the Validity and Enforceability of Public Law No. 20-134*, 3-ER-474, a matter before the Guam Supreme Court in which the Governor had sought a declaratory judgment from the Guam Supreme Court on three questions:

1. Whether P.L. 20-134 was "void at the time of its passage" and "void forever" such that it could not be revived after *Dobbs*.

2. Whether P.L. 20-134 was an *ultra vires* act.

3. Whether P.L. 20-134 was impliedly repealed by later legislation.

2-ER-228–229. The Guam Supreme Court eventually declined to address the first question, but it did order the parties to brief the second and third questions. 3-ER-474. Invoking that order, the Governor asserted that the district court needed to abstain under *Pullman* because (the Governor argued) the third question before the Guam Supreme Court would be dispositive of the Attorney General's motion here. *Id.* The Attorney General opposed this motion. *See* 2-ER-106. As of the date of this filing, that request for an advisory opinion remains pending before the Guam Supreme Court.

**2.** Besides moving for abstention, the Governor—again, nominally a co-defendant with the Attorney General—also opposed the Attorney General's Rule 60(b) motion on its merits. 2-ER-132. Repeating her arguments about why the district court should abstain under *Pullman*, the Governor argued that the Guam Legislature repealed P.L. 20-134 by implication, making this case moot. Alternatively, the Governor argued that no significant change in the law has occurred with respect to Sections 4 and 5, meaning the injunction must remain in place for those provisions.

9

The Governor was not the only party to oppose the Attorney General's Rule 60(b) motion on the merits. Guam Memorial Hospital—another nominal co-defendant—likewise opposed it, but for slightly different reasons. 2-ER-033. GMH focused entirely on Sections 4 and 5, asserting that those provisions violate the First Amendment. GMH argued primarily that Sections 4 and 5 are severable, and if the district court was inclined to lift the injunction, it could only do so with respect to the remaining provisions. 2-ER-034. In the alternative, if Sections 4 and 5 were not severable, the district court must leave the injunction in place. *Id.*

Finally, the Plaintiffs from the original 1990s litigation also opposed the Attorney General's motion to vacate. 2-ER-062. Plaintiffs' opposition brief was joined in full by three Proposed Intervenors—Dr. Shandhini Raidoo, Dr. Bliss Kaneshiro, and Famalao'an Rights—whose motion to intervene was pending when they joined Plaintiffs' Rule 60(b) opposition brief. 2-ER-103. Together, Plaintiffs and Proposed Intervenors first asserted that P.L. 20-134 is void *ab initio*. 2-ER-077. They next argued that vacating the injunction in its entirety would not be suitably tailored with respect to Section 5. 2-ER-085.

In all that briefing before the district court, no party disagreed that the 1990 injunction of Section 2 and 3 rises or falls entirely with *Roe*. Rather, the disagreement with respect to those provisions was whether the district court could vacate the injunction such that P.L. 20-134 is now enforceable. The main points of dispute were whether other issues of law—primarily that P.L. 20-134 was void *ab initio* or impliedly

repealed—that were *not* decided in 1990 and thus *not* the basis for the 1990 injunction could nevertheless become new, alternative bases to keep the injunction in place after *Dobbs*. And all parties disagreed about how the district court needed to resolve that question, with Plaintiffs arguing principally that the Attorney General had not carried his Rule 60(b) burden *because* he did not rebut those never-before-decided issues.

**B.** Two days after the Attorney General filed his final reply brief in support of his Rule 60(b) motion, 2-ER-007, the district court denied that motion in a four-page decision purporting to dispose of all arguments and issues before it, 1-ER-002.

The district court first concluded that the Defendant Attorney General had failed to respond to certain arguments raised by Plaintiffs and Proposed Intervenors—who still had not officially been made parties to the lawsuit—and it was therefore "reasonable to presume that Defendant AG takes no position on their arguments or is not contesting them." 1-ER-004.

The district court then found that the Attorney General failed to address "whether the change in law in *Dobbs* warrants vacatur of the permanent injunction in its entirety." 1-ER-005. *But see* 2-ER-235 ("Because there is no longer a legal basis to support the injunction, it must be vacated ….").

Finally, the district court concluded that the Attorney General failed to respond to Plaintiffs' argument that P.L. 20-134 "was a legal nullity the moment it was passed." 1-ER-005. *But see* 2-ER-113 (explaining that the district court could not reach the void *ab initio* question until it lifts the injunction); 2-ER-113 ("*But until the injunction in this case*

11

*is vacated*, the questions whether the Guam Legislature was acting *ultra vires* in violation of Guam's Organic Act … or whether Public Law 20-134 was implied repealed by subsequent enactments, are abstract constructs."). In effect, rather than address whether the Attorney General's *actual arguments* carried his Rule 60(b) burden, the district court apparently imposed a burden-shifting framework that first looked to Plaintiffs' arguments, then faulted the Attorney General for purportedly failing to respond to them. And the Attorney General's purported failure to respond, according to the district court, was why the Attorney General failed to carry his affirmative and independent burden under Rule 60(b)(5). 1-ER-005.

The district court concluded by stating "[a]ny other pending motions in this case are hereby [moot]." 1-ER-005. Those pending motions included the Governor's motion for abstention, which raised the question of whether the Guam Supreme Court's proceedings would resolve the matter, and the Proposed Intervenors' motion to intervene, which served as the basis for their filing a joint opposition brief with Plaintiffs. As of the date this brief is filed, Proposed Intervenors Dr. Shandhini Raidoo, Dr. Bliss Kaneshiro, and Famalao'an Rights still are not parties to this litigation.

## SUMMARY OF ARGUMENT

Because the district court denied the Attorney General's Rule 60(b) motion, the Territory of Guam is the only place within the United States' territorial jurisdiction where *Roe* has continuing vitality. After *Dobbs v. Jackson Women's Health Organization*, no basis in law or equity remains to support the 1990 permanent injunction of P.L. 20-

12

134—a law in the Territory of Guam passed by the people's elected representatives, signed into law by the Governor, and vigorously defended by the Attorney General on behalf of the people. Given *Dobbs*, the Attorney General aimed to vindicate the people's voice by asking the district court to vacate the injunction and let the Territory of Guam enforce its own abortion laws—that is, to let Guam do what *Dobbs* expressly lets Guam do.

After extensive briefing, the district court issued a four-page order purporting to dispose of the issues before it and denying the Attorney General's request. But that four-page order contains numerous legal and factual errors, each of which constitutes an abuse of discretion that this Court should correct.

First, the district court abused its discretion when it denied the Attorney General's Rule 60(b) motion despite obvious changed circumstances after *Dobbs*. Second, the district court incorrectly concluded that the Attorney General forfeited some arguments even though those arguments were irrelevant to the questions before the district court. Third, and finally, the district court seemed to suggest that (but did not actually decide whether) P.L. 20-134 may be void *ab initio* or repealed by implication. As a result, the district court's order decided everything—the injunction remains in place—while simultaneously deciding nothing.

This Court should reverse the district court's order and vacate the injunction of P.L. 20-134 in its entirety. The district court erred as a matter of law and fact, and *Dobbs* does not allow this Court to keep the 1990 injunction in place.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a Rule 60(b) motion for an abuse of discretion. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258 (9th Cir. 2010). But even when reviewing an order denying a Rule 60(b) motion, the Court reviews questions of law "underlying the district court's decision de novo." *Jeff D.*, 365 F.3d at 850. And this Court will "reverse where the district court applied the incorrect legal rule or where the district court's application of the law to the facts" was "illogical" or "implausible." *Ahanchain*, 624 F.3d at 1258.

## ARGUMENT

**I.    The 1990 permanent injunction against P.L. 20-134 must be vacated under Rule 60(b)(5).**

The district court's order flouts this Court's precedent requiring that an injunction be vacated under Rule 60(b) whenever the law supporting that injunction evaporates, as *Roe* did after *Dobbs*. That precedent means the district court necessarily abused its discretion by refusing to vacate the 1990 injunction of P.L. 20-134 in these changed circumstances. And it compounded that legal error by applying wrong Rule 60(b) standards. The upshot of its erroneous order? The District of Guam stands alone; it is the only federal court in the country currently using *Roe* to block local abortion laws. Its decision to maintain its 1990 injunction of P.L. 20-134 based on a purported federal constitutional right to an abortion cannot be read any other way.

14

**A.** **Because the 1990 permanent injunction was based solely on *Roe* and *Roe* is no longer good law, the district court necessarily abused its discretion by denying the Attorney General's Rule 60(b) motion.**

Federal Rule of Civil Procedure 60(b)(5) authorizes a court to lift an injunction that "is based on an earlier judgment that has been reversed or vacated" or when "applying [the injunction] prospectively is no longer equitable." Though the Rule's text implies discretion to grant this relief—stating that a "court *may* relieve a party" from a prior injunction, Fed. R. Civ. P. 60(b) (emphasis added)—"once a party carries" its burden to demonstrate that "changed circumstances warrant relief," a "court abuses its discretion 'when it refuses to modify an injunction.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)). Of dispositive importance here, "[a]n unbroken line of Supreme Court cases makes clear that it is an abuse of discretion to deny a modification of an injunction after the law underlying the order changes to permit what was previously forbidden." *California*, 978 F.3d at 713-14.

Yet, that is exactly what happened here. The district court's 1990 permanent injunction rests on one premise alone: P.L. 20-134 violated *Roe*. The district court concluded that because "*Roe v. Wade* [is] the law in the Territory of Guam … defendants … are permanently enjoined from enforcing any of the provisions of Public Law 20-134." *Ada*, 776 F. Supp. at 1426; *see also id.* at 1428 ("Having determined that *Roe v. Wade* applies in Guam, the Court finds that Public Law 20-134 is unconstitutional."). Quoting *Roe*, the district court concluded that "because the law does not recognize, as it must, any of the other constitutionally-protected interests involved, it violates the Due

Process Clause of the Fourteenth Amendment." *Id.* at 1428-29. This Court's opinion affirming the injunction also rests on that same single premise. This Court first concluded that "Guam's Act ma[de] no attempt to comply with *Roe* … [and] [i]f the core of *Roe* remains good law, then, the Act is clearly unconstitutional." *Ada*, 962 F.2d at 1371-72. The Court next held that *Roe* remained good law, and it was "not for this court to discard that precedent." *Id.* at 1374.

But *Dobbs* discarded it. *Roe* is no more. So *Ada*'s only premise is now false: *Dobbs* unequivocally overruled *Roe* and *Casey*, holding that "[t]he Constitution makes no reference to abortion," "no such right is implicitly protected by any constitutional provision," and "[t]he Constitution does not prohibit the citizens of each State from regulating or prohibiting abortion." *Dobbs*, 142 S.Ct. at 2242, 2284. Rarely in 234 years of American jurisprudence has "the law underlying" an injunction so clearly "change[d] to permit what was previously forbidden." *California*, 978 F.3d at 713-14. But the district court still denied the Attorney General's Rule 60(b) motion. *See* 1-ER-005. If this Court's cases mean what they say, the only possible conclusion in these circumstances is that the district court's order "deny[ing]" the Attorney General's Rule 60(b) motion was "an abuse of discretion." *California*, 978 F.3d at 713-14.

*California* and the cases it cites confirm that conclusion. In *California*, the EPA became subject to dueling deadlines to promulgate a federal plan about landfill emissions: one deadline set by a district court's injunction, and another (later) deadline set by EPA's own rulemaking (completed after the injunction was entered). *See id.* at

710-11. EPA moved under Rule 60(b) for relief from the injunction-ordered deadline based on the intervening change in law—the new (later) deadline EPA adopted by regulation—and this Court concluded that the district court abused its discretion by denying EPA's Rule 60(b) motion "[b]ecause EPA's new regulations have removed the legal basis for the court's deadline." *Id.* at 717. *California* could not be clearer: "We therefore hold that when a district court reviews an injunction based solely on law that has since been altered to permit what was previously forbidden, it is an abuse of discretion to refuse to modify the injunction in the light of the changed law." *Id.* at 718-19. After all, courts "have no power to pick and choose what law the parties before [the court] ought to follow. Yet that is exactly what a court does when it refuses to modify an injunction that relies on a superseded law." *Id.* at 719.

*California* invoked three Supreme Court cases and two other Ninth Circuit cases to support its holding. Specifically, it relied on *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 18 How. 421, 15 L.Ed. 435 (1855); *Sys. Fed'n No. 91, Ry. Emps.' Dep't v. Wright*, 364 U.S. 642 (1961); *Agostini*, 521 U.S. 203; *California Department of Social Services v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008); and *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir. 1986). *See California*, 978 F.3d at 714-15. This Court thoroughly reviewed the reasoning in those five cases, concluding that each required granting a Rule 60(b) motion "solely on the fact that the new law permitted what was forbidden under the injunction—without engaging in any balancing of the harms to the parties." *Id.* at 714.

17

Given *Dobbs's* clear overruling of *Roe*, the district court's denial of the Attorney General's Rule 60(b) motion is a blatant violation of *California*. But in the district court, Plaintiffs tried to reconcile their position (that the 1990 injunction remains proper) with *California* by arguing that *California* involved a mandatory injunction rather than a prohibitory injunction like the one here. 2-ER-081. This argument fails on several levels. First, Plaintiffs never explain why the Rule 60(b) standard should change based on whether an injunction is mandatory or prohibitory. *California* itself suggests that this distinction is irrelevant. That case rejected the argument that Rule 60(b) should treat an injunction that "'require[s] one discrete task'" differently than "continuing or ongoing injunctions," for "it is the prospective effect (rather than the continuing or ongoing nature) of an injunction that matters, and which renders the injunction amenable to modification based on new law." *California*, 978 F.3d at 716-17. Since the determinative factor in *California*'s analysis was an injunction's "prospective effect"—and mandatory and prohibitory injunctions both have prospective effect—Plaintiffs' purported distinction is no distinction at all.

Perhaps more to the point, the Supreme Court cases upon which *California* relied involved prohibitory injunctions like the district court's here. The injunction in *Wheeling Bridge* prohibited rebuilding a bridge that was unlawful when the injunction was entered, but became lawful by act of Congress passed after the injunction took effect. *See* 59 U.S. at 422-23, 426. And the injunction in *Agostini* prohibited New York City "from sending public school teachers to parochial schools," but when the Court overruled its

18

Establishment Clause precedent upon which that injunction was based, it granted the City "relief from the prospective injunction." *California*, 978 F.3d at 714 (citing 521 U.S. at 208-09, 212). Those cases should be the final nail in Plaintiffs' mandatory/prohibitory coffin.

Other cases throughout the country only reinforce this conclusion. For example, in *Prudential Insurance Company v. National Park Medical Center, Inc.*, the district court had entered a permanent injunction in 1998 based on an Eighth Circuit decision about ERISA preemption. 413 F.3d 897, 902 (8th Cir. 2005) (describing *Prudential Ins. Co. v. Nat'l Park Med. Ctr., Inc.*, 154 F.3d 812, 831 (8th Cir. 1998)). The Supreme Court later held in *Kentucky Association of Health Plans v. Miller*, 538 U.S. 329 (2003), that ERISA did not preempt two similar statutes, reversing prior Eighth Circuit precedent. Based on the change in law in *Miller*, the district court vacated the injunction, and the Eighth Circuit affirmed. *Prudential*, 413 F.3d at 914.

Each of these cases leaves no doubt: a court must vacate an injunction when the injunction's "legal basis has evaporated and new law permits what was previously enjoined." *California*, 978 F.3d at 711. Whatever discretion the district court may have in evaluating a mine-run Rule 60(b) motion, this Court's precedent confirms that the district court has *no* discretion in these circumstances—where the sole basis for the injunction has been overturned by the Supreme Court, vacatur is required. *See id.* at 718-19. The district court's decision defies the "unbroken line" of Supreme Court cases and *California* commanding as much.

In these circumstances, this Court itself must reverse and vacate the 1990 injunction under Rule 60(b). Its power to do so is apparent from both *California* and *Agostini*. In *Agostini*, the Supreme Court conducted a full Rule 60(b) analysis, finding that the significant change in Establishment Clause law in that very case justified overruling precedent and vacating the injunction in that case based on the precedent it simultaneously overruled. 521 U.S. at 238-39. Because the Supreme Court is the only Court that can reverse its precedent, the Supreme Court was the appropriate Court to vacate the injunction. *Id.* at 237-38 (explaining vacatur was warranted because the injunction "rest[ed] upon a legal principle that can no longer be sustained" given its simultaneous Establishment Clause holding). Accordingly, the Court remanded with instructions to vacate. *Id.* at 240. Likewise, after concluding that the injunction was no longer justified in *California*, this Court remanded with the express instruction to modify the injunction to update the judicially imposed deadline consistent with the agency's new regulatory deadline. 978 F.3d at 719. Here, the injunction must be vacated in its entirety, so no further analysis on remand is necessary. *Agostini*, 521 U.S. at 238.

**B.     The district court's refusal to vacate the 1990 injunction directly conflicts with similar post-*Dobbs* decisions.**

*California*'s change-in-law-requires-vacatur rule discussed in section I.A has manifested itself throughout the Nation since *Dobbs*. Guam was one of several states and territories with litigation over the constitutionality of its abortion laws. But Guam now appears to bear a dubious distinction: as far as the Attorney General can tell, it is

the *only* place in the United States whose local abortion laws remain captive to the now-defunct *Roe*. Other federal courts have held that pre-*Dobbs* injunctions based on *Roe* or *Casey* cannot survive in a post-*Dobbs* world.

In fact, the same day *Dobbs* was decided, lower courts began dissolving preliminary injunctions issued based on *Roe* and *Casey*. *See, e.g., Preterm-Cleveland v. Yost*, 1:19-cv-360, 2022 WL 2290526 (S.D. Ohio June 24, 2022) (granting opposed emergency motion to dissolve preliminary injunction); *Robinson v. Marshall*, 2:29-cv-365, 2022 WL 2314402 (M.D. Ala. June 24, 2022) (granting unopposed emergency motion to dissolve preliminary injunction). Other courts soon followed suit. *See Raidoo*, 75 F.4th at 1118 ("[V]acat[ing] district court's preliminary injunction against Guam's in-person informed-consent law."); *Memphis Ctr. for Reproductive Health v. Slatery*, No. 20-5969, 2022 WL 2570275, at *1 (6th Cir. June 28, 2022) (vacating preliminary injunction); *Little Rock Family Planning Servs. v. Jegley*, 21-2857 (8th Cir. July 26, 2022) (same); *Planned Parenthood S. Atlantic v. Wilson*, 3:21-00508, 2022 WL 2905496, at *4 (D.S.C. July 22, 2022) (same); *see also Bernard v. Indiv. Members of Ind. Med. Licensing Bd.*, 1:19-cv-1660, 2023 WL 2742321, at *6 (S.D. Ind. Mar. 31, 2023) (entering judgment on the pleadings for Defendants despite pre-*Dobbs* preliminary injunction); *see also Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Hawai'i, Alaska, Indiana, Kentucky, Inc.*, 211 N.E.3d 957, 962 (Ind. 2023) (same).

At the same time, courts began to reconsider permanent injunctions that similarly relied on *Roe* and *Casey*. *See, e.g., Whole Woman's Health v. Young*, 37 F.4th 1098 (5th Cir.

2022); *Bryant v. Woodall*, 622 F.Supp.3d 147, 150 (M.D.N.C. 2022); *EMW Women's Surgical Ctr. P.S.C. v. Cameron*, 3:18-cv-224, 2022 WL 19560712, at *1 (W.D. Ky. Aug. 17, 2022); *June Med. Servs. LLC v. La. Dep't of Health*, 14-525, 2022 WL 16924100, at *15 (M.D. La. Nov. 14, 2022); *see also Sistersong Women of Color Reproductive Justice Collective v. Carr*, 40 F.4th 1320 (11th Cir. 2022) (vacating permanent injunction after *Dobbs* was decided while appeal pending). In each of these cases, the court saw that *Dobbs* leaves no other option, and lifted the permanent injunction.

The district court's decision below is thus a stark outlier. Departing dramatically from other courts, the District of Guam has refused to follow the principles that required vacating the injunctions in each of those virtually identical cases. Its decision refusing to vacate the 1990 injunction "after its legal basis has evaporated" constitutes an abuse of discretion as a matter of law. *California*, 978 F.3d at 711.

### C. The district court's order denying the Attorney General's Rule 60(b) motion also rests on two separate errors of law.

By itself, the district court's refusal to follow *California*—making it the only court in the country to still count *Roe* as controlling authority—is grounds for reversal. But if more were needed, the district court's Rule 60(b) analysis rests on two other errors of law that also constitute abuses of discretion warranting reversal.

**1.** Start from first principles: a Rule 60(b) movant bears the burden of showing it satisfies the Rule's requirements. *Jeff D.*, 643 F.3d at 283. Here, the Attorney General carried that burden by pointing out the obvious: *Dobbs* overruled *Roe*, the only basis for

the 1990 permanent injunction. *See* 2-ER-234–235; *Ada*, 962 F.2d at 1372-74 ("If the core of *Roe* remains good law, then, the Act is clearly unconstitutional."). But the district court neither acknowledged nor analyzed the Attorney General's arguments about why those "changed circumstances warrant relief." *Horne*, 557 U.S. at 447. Instead, the district court built a burden-shifting framework: It first considered Plaintiffs' argument that P.L. 20-134 was void *ab initio*, and then flipped the burden to the Attorney General to show that P.L. 20-134 was not void. 1-ER-005. Because, according to the district court, the Attorney General failed to rebut Plaintiffs' voidness arguments, the Attorney General failed to meet his burden under Rule 60(b). *Id.*

This gets the Rule 60(b) standard exactly backward. Properly applied, the inquiry starts with the movant—here, the Attorney General—and examines whether he showed "changed circumstances" justifying relief from the permanent injunction. *Jeff D.*, 643 F.3d at 283. And as explained above, the Attorney General readily met his burden to show "changed circumstances" after *Dobbs*. *See Raidoo*, 75 F.4th at 1121 ("The Supreme Court in *Dobbs* overturned *Roe* and *Casey*, rejecting a constitutional right to an abortion and casting aside *Casey's* undue burden test for assessing abortion laws."). That question alone resolves the Rule 60(b) motion, and the district court had no basis in law or equity to reach the void *ab initio* issue through a burden-shifting framework—let alone to deny the Rule 60(b) motion based on its view that the Attorney General had failed to properly respond once it shifted the burden to him. The district court's failure to address this threshold question, and to substitute in its place a heretofore-unknown

burden-shifting framework that makes an opponent's arguments *against* vacatur under Rule 60(b) the dispositive inquiry, constitutes a separate error warranting reversal. *See, e.g., Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (concluding the district court abused its discretion by "appl[ying] the wrong legal standard" to Rule 60(b)(1) motion); *Lemoge v. United States*, 587 F.3d 1188, 1195-96 (9th Cir. 2009) (same); *Am. Games, Inc. v. Trade Prods., Inc.*, 142 F.3d 1164, 1167-68 (9th Cir. 1988) (applying same to Rule 60(b)(5)).

**2.** The district court also committed an error of law by denying the Attorney General's Rule 60(b) motion because he purportedly "failed to address whether the change in law in *Dobbs* warrants vacatur of the permanent injunction in its entirety." 1-ER-005. As far as the Attorney General can tell, the key phrase in that sentence is "in its entirety"—a clause that appears to show the district court tacitly agreed with Plaintiffs' argument that even if *Dobbs* eliminated any basis to enjoin sections 2 and 3 of P.L. 20-134 (the sections outlawing most abortions), *Dobbs* did not also eliminate the basis to enjoin sections 4 and 5 of P.L. 20-134 (the sections outlawing solicitation of abortions). *See* 2-ER-043–045; 2-ER-085–086. Because it appears to have denied the Rule 60(b) motion in part on these grounds, the district court committed an error of law by disregarding this Court's Rule 60(b) standard, the Attorney General's arguments, and the 1990 decision itself.

First, as discussed, the Rule 60(b) inquiry asks whether the Attorney General showed changed circumstances sufficient to justify vacating the injunction, and the

district court had no basis under Rule 60(b) to address (or make the Attorney General address) the *scope* of the injunction *before* answering that question. *Jeff D.*, 643 F.3d at 283. Its attempt to do so—and its apparent decision to base its holding in part on that extra-legal requirement—constitutes an error of law warranting reversal. *Cf. United States v. Taylor*, 487 U.S. 326, 336-37 (1988) ("Where, as here, Congress has declared that a decision will be governed by consideration of particular factors, a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review. Only then can an appellate court ascertain whether a district court has ignored or slighted a factor that Congress has deemed pertinent ….").

Second, and in any case, the Attorney General *did* address it. *Dobbs* unquestionably overruled *Roe*, the only basis for the entire injunction. *See Ada*, 776 F. Supp. at 1428-29 (concluding that "Sections 2, 3, 4, and 5 … of the Guam law fail to make distinctions *based on the stage of the pregnancy*" and thus violate the Fourteenth Amendment) (emphasis added). And throughout briefing below, the Attorney General made clear that *Dobbs*'s seismic shift in the law warrants vacating *the entire 1990 injunction*. *See, e.g.*, 2-ER-235 ("Because there is no longer a legal basis to support the injunction, it must be vacated …."); 2-ER-131 ("This Court should grant the motion to vacate the injunction …."); 2-ER-008–010 (explaining the First Amendment does not alter the scope of the injunction). As night follows day, that conclusion follows directly from *Dobbs* because the district court's 1990 injunction rested entirely on the now-false

25

premise of *Roe. Compare Ada*, 776 F. Supp. at 1428-29 (holding that P.L. 20-134 "does not recognize, as it must, any of the other constitutionally-protected interests involved" and thus "violates the Due Process Clause of the Fourteenth Amendment"), *with Dobbs*, 142 S.Ct. at 2251 (there is no "positive *right* to procure an abortion at any stage of pregnancy").

Straining to avoid that conclusion, Plaintiffs, Proposed Intervenors, and GMH argued below that *Dobbs* had no impact on sections 4 and 5 of P.L. 20-134—the anti-solicitation provisions. *See* 2-ER-043–045; 2-ER-085–086. To support their argument, they pointed to one footnote in the district court's 1990 decision stating that "Sections 4 and 5 also violate the First Amendment since they attempt to prohibit freedom of speech." *Ada*, 776 F. Supp. at 1428 n.9. *But see* 2-ER-242 (calling this "dicta … without analysis").

To the extent the district court denied the Attorney General's motion because the court agreed with Plaintiffs and GMH that *Dobbs* did not change the basis for enjoining sections 4 and 5, this too was legal error.[3] Their arguments that the injunction of sections 4 and 5 survives *Dobbs* fail as a matter of law. For if sections 2 and 3 (which

---

[3] In 1990, the Defendants (the Governor and the Attorney General) did not appeal the injunction as it applied to sections 4 and 5. But that litigation choice has no bearing on whether this Court *today* can review the injunction in a Rule 60(b) posture as it applies to all provisions of P.L. 20-134. If the basis for the injunction "evaporates," whether the enjoined parties originally appealed the injunction—in whole or in part—is irrelevant. Rather, the dispositive question under Rule 60(b) is whether the basis for the injunction still exists. Here, it does not.

ban most abortions) are now enforceable after *Dobbs*—and they plainly are—then any speech or conduct prohibited by sections 4 and 5 necessarily falls outside the scope of the First Amendment. "Offers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297 (2008); *see also United States v. Hansen*, 143 S.Ct. 1932, 1947 (2023) ("Speech intended to bring about a particular unlawful act has no social value[.]"). Because sections 2 and 3 make most abortions illegal, sections 4 and 5—which make it a crime to solicit abortions—readily pass constitutional muster under *Williams*. Thus there is no basis to continue enjoining sections 4 and 5.

*Williams* also dooms any attempt to invoke the overbreadth doctrine to sustain the 1990 injunction of sections 4 and 5. "Solicitation" as its "typically understood" makes an overbreadth challenge "hard to sustain." *Hansen*, 143 S.Ct. at 1941. The overbreadth doctrine requires a showing that the law "prohibits a substantial amount of protected speech" relative to its "plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Because sections 2 and 3 prohibit nearly all abortions in the Territory of Guam, there is no "substantial amount of protected speech" when it comes to *soliciting* an abortion. *Id.* (As compared to, for example, speech about abortion in political or issue or advocacy campaigns, which would receive First Amendment protection.)

27

To the extent the district court denied the Attorney General's Rule 60(b) motion because it adopted the opposing parties' First Amendment arguments, this was legal error, and this Court must vacate the injunction in its entirety.

## II. There are no grounds to affirm the district court's order denying Rule 60(b) relief.

Section I explains why this is a straightforward case: This Court has already held that it's an abuse of discretion for courts to "refuse to modify an injunction" when that "injunction [is] based solely on law that has since been altered to permit what was previously forbidden." *California*, 978 F.3d at 718-19. That describes this case precisely: the 1990 injunction was based solely on law (*Roe*) that has since been altered (by *Dobbs*) to permit what was previously forbidden (local regulation of abortion, including banning abortion regardless of the unborn child's age). Yet the district court refused to modify its 1990 permanent injunction. So based solely on what the district court did *not* do—follow *California*—this Court should reverse the judgment below and vacate the 1990 injunction.

Whatever reasoning *does* appear in the district court's order does not redeem the order from that failure and save it from reversal. The order is only four pages, and the court's reasoning and bases for its decision are not particularly clear. As best the Attorney General can discern, however, the district court might have based its order on three conclusions. None of them justifies affirming the order.

28

### A.    Arguments opposing a Rule 60(b) motion—but not responsive to the Rule 60(b) standard—cannot defeat that motion.

The district court's order appears to be based at least in part on a red herring: its view that the Attorney General waived or forfeited a response to Plaintiffs' argument that "'irrespective of *Dobbs* or any other Supreme Court decision concerning abortion issued after [Guam Public Law 20-134] was enacted, the [public law] was a legal nullity the moment it was passed and can have no force or effect today.'" 1-ER-005 (quoting 2-ER-090). The district court thought that "Defendant AG has not refuted this argument," *id.*, and that "[b]ased on Defendant AG's lack of a response to Plaintiffs' arguments, … it is reasonable to presume that Defendant AG takes no position on their arguments or is not contesting them," 1-ER-004. To the extent the district court based its order on this reasoning, it abused its discretion by doing so for two reasons.

First, and most important, under *California* the dispositive Rule 60(b) inquiry is whether "an injunction [is] based solely on law that has since been altered to permit what was previously forbidden." 978 F.3d at 718-19. If so, "it is an abuse of discretion to refuse to modify the injunction in light of the changed law." *Id.* at 719. Plaintiffs' arguments that P.L. 20-134 was void *ab initio* are irrelevant to both questions; P.L. 20-134's original validity sheds no light on (a) what law the 1990 injunction was based on, or (b) whether that law has since been amended to permit what it previously forbade. As discussed, the answers to those questions are (a) solely *Roe*, and (b) yes, by *Dobbs*. Neither answer requires any analysis of P.L. 20-134's validity when passed.

29

In fact, Plaintiffs' own briefing confirms that their void-*ab-initio* arguments do not answer *California*'s Rule 60(b) inquiry. Their brief opposing the Rule 60(b) motion contended that in the 1990 proceedings the district court "held, and the Ninth Circuit affirmed," that P.L. 20-134 "violated the Due Process Clause of the Fourteenth Amendment"—*i.e.*, both courts held only that the law violated *Roe.* 2-ER-079–080. Only after restating this Court's holding do Plaintiffs then assert that P.L. 20-134 "was a legal nullity the moment it was passed and can have no force or effect today." 2-ER-081. What Plaintiffs never argue speaks volumes more than what they do—they *never* contend that the 1990 injunction *itself* was based on a holding from the district court or this Court *at that time* that P.L. 20-134 was void *ab initio.* Plaintiffs do not argue that because they cannot argue that consistent with their duty of candor; no such holding appears anywhere in the district court's 1990 injunction or this Court's 1992 opinion affirming it.

Whatever Plaintiffs' views about *alternative* arguments that *might also have* supported the injunction in 1990, *California* requires courts resolving a Rule 60(b) motion to examine the *actual* bases for the injunction *at the time it was issued.* 978 F.3d at 718-19. In this way, the Rule 60(b) standard does not mimic the well-known rule allowing this Court to affirm a judgment on any grounds apparent from the record. *E.g.*, *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). Rather, *California* confirms that the Rule 60(b) analysis turns solely on what law *in fact* supported the injunction, and whether intervening events have changed that *actually applied* law.

Because the 1990 opinion contains no holding on Plaintiffs' new and alternative void-*ab-initio* arguments, those arguments are irrelevant to resolving the Attorney General's Rule 60(b) motion. To the extent the district court thought otherwise—and faulted the Attorney General for (in the court's view) failing to engage on P.L. 20-134's initial validity—that was legal error.

Second, and in any event, the Attorney General *did* respond to Plaintiffs' void *ab initio* arguments—but apparently not in a way that satisfied the district court. As noted, the Governor of Guam, a nominal defendant here, both opposed the Attorney General's Rule 60(b) motion and filed a request for an advisory opinion with the Guam Supreme Court, which the Governor then invoked to support her separate motion for *Pullman* abstention in this case. *See supra* 9. In the Attorney General's response to the Governor's *Pullman* abstention motion, he acknowledged that the Guam Supreme Court had agreed to answer this very void *ab initio* question (along with a separate implied-repeal question). *See* 2-ER-108, -112. He then stated his office's view that "these are questions of Guam law to be decided by Guam courts, if at all," 2-ER-108, because those questions were "abstract constructs" unless the district court (or, now, this Court) vacated the 1990 injunction; regardless of any court's view about whether P.L. 20-134 was initially valid or impliedly repealed, the Attorney General's office would have no enforcement authority if the 1990 injunction remains in place. 2-ER-113. In other words, the questions at issue in the Guam Supreme Court proceeding have no bearing on whether the injunction can—and must—be lifted under Rule 60(b).

The district court of course remained free to disagree with the Attorney General's positions. Ideally, had it done so, it would have said why in a reasoned opinion to make this Court's review more straightforward. *See Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724-25 (9th Cir. 2007) ("We cannot review the district court's exercise of its discretion in weighing these factors unless we know that it has done so and why it reached its result."); *United Nat. Ins. Co. v. R & D Latex Corp.*, 141 F.3d 916, 919 (9th Cir. 1998) ("Articulation by the district court of its reasoning is especially critical in cases, such as the instant ones, where related suits presenting the same issues of state law are pending in state court."). But the district court's apparent suggestion that the Attorney General did not respond to those arguments misstates the proceedings below. And because Plaintiffs' void *ab initio* arguments are irrelevant to the Rule 60(b) analysis, even if the district court denied the Attorney General's Rule 60(b) motion at least in part based on an alleged failure to respond, that only compounds the district court's error in failing to give effect to *Dobbs*, which is now "the law in the Territory of Guam." *Ada*, 776 F. Supp. at 1427 ("[T]he decisions of the United States Supreme Court … are the law of the land, [and] they apply with equal force and effect to the Territory of Guam.").

### B. Public Law 20-134 was not void a*b initio.*

Though Plaintiffs' argument—that P.L. 20-134 is void *ab initio*—is irrelevant to the Rule 60(b) inquiry, the district court's opinion might be read to have considered and adopted it. *See* 1-ER-004–005 (restating Plaintiffs' argument that the law "was a legal

nullity the moment it was passed" and concluding that "Defendant AG … is not contesting [the arguments]"). To the extent that accurately reflects the district court's decisional process, this Court should reverse.

Plaintiffs' void *ab initio* arguments constitute improper and untimely attempts to amend the basis for the injunction. After all, neither the district court nor this Court addressed those arguments in the 1990s litigation. In other words, Plaintiffs' void *ab initio* arguments are new, alternative bases to support the injunction. And Rule 60(b) does not allow Plaintiffs to raise new, alternative bases for an injunction for the first time in a brief *opposing* a Rule 60(b) motion to vacate that injunction. That's why this "question[] of Guam law" should be decided by Guam courts, if at all," in a new, separate lawsuit, and then only *after* this Court vacates the injunction (lest the injunction make those issues moot); Plaintiffs are procedurally barred from raising it now. 2-ER-108.

Plaintiffs' arguments fail on the merits in any event. They contend that since the Legislature's power under the Organic Act extends to passing only those laws "not inconsistent with … the laws of the United States applicable to Guam," 48 U.S.C. §1423a, the Guam Legislature exceeded its authority when it passed P.L. 20-134 while *Roe* was the law of the land. This argument fails for two reasons.

First, the prior proceedings in this case rebut any contention that the Guam Legislature should have known *in 1990*—when it passed P.L. 20-134—that the law violated "the laws of the United States applicable to Guam." 48 U.S.C. §1423a. "With

the exception of certain 'fundamental rights,' federal constitutional rights do not automatically apply to unincorporated territories" like Guam. *Guam v. Guerrero*, 290 F.3d 1210, 1214 (9th Cir. 2002). Rather, "[a]n act of Congress is required to extend constitutional rights to the inhabitants of unincorporated territories." *Id.* (citing *Pugh v. United States*, 212 F.2d 761, 762-63 (9th Cir. 1954)). The Mink Amendment of 1968 extended certain provisions and amendments of the U.S. Constitution to Guam, *see* 48 U.S.C. §1421b(u), but not until 1992—in the prior merits appeal involving this same injunction—did this Court "hold that *Roe v. Wade* applies to Guam as it applies to the states." *Ada*, 962 F.2d at 1370. Even if this Court ultimately concluded that congressional intent was "clear," *id.* at 1370, the fact that this was an open question before *Ada* eliminates any basis to hold that P.L. 20-134 was void from its enactment in 1990.

Second, neither the district court nor this Court held in the 1990s litigation about the injunction itself that P.L. 20-134 was void *ab initio*. (If either court *had* issued such a ruling, there would have been no reason for the Governor's recent request to the Guam Supreme Court for an advisory opinion on this issue; it would have been already decided.) In other words, Plaintiffs' void *ab initio* arguments remain undecided to this day.

That fact fatally undermines Plaintiffs' arguments. Right now—the first time any court will decide whether P.L. 20-134 is void *ab initio*—the governing law is *Dobbs*, and *Dobbs* held that *Roe* itself was void *ab initio*: "*Roe* was egregiously wrong from the start.

34

Its reasoning was exceptionally weak, and the decision has had damaging consequences." *Dobbs*, 142 S.Ct. at 2243. In other words, properly understood, the Constitution does not now prohibit (and never should have prohibited) state or territorial laws banning pre-viability abortions. *Id.* at 2265 (*Roe* "was on a collision course with the Constitution from the day it was decided"). And neither this Court nor the Guam Supreme Court can "interpret matters of federal law in a manner other than that provided by the" Supreme Court of the United States. *Guerrero*, 290 F.3d at 1217.

*Dobbs* thus confirms that *Roe* never was good law and cannot now in any circumstance be given continuing effect. Nothing about that conclusion or the consequences flowing from it is surprising or remarkable. It's precisely why courts throughout the country have been vacating (and must vacate) injunctions based on *Roe*. *See supra* 20-22. It also means that any post-*Dobbs* analysis measuring an abortion law against the Constitution—in the context of a direct challenge, a Rule 60(b) motion, or a void *ab initio* analysis—must do so based on what *Dobbs* says the Constitution means, not on *Roe*'s debunked view. *Agostini*, 521 U.S. at 238 ("[T]he exercise of discretion cannot be permitted to stand if we find it rests upon a legal principle that can no longer be sustained."). To do otherwise, and continue measuring abortion laws (of any vintage) against *Roe*, perpetuates a fiction that keeps *Roe*, zombie-like, roaming territorial and state codes in search of additional victims. *Dobbs* cannot be read out of existence in this way before it even appears in the U.S. Reports.

35

*Dobbs*'s procedural posture further seals the fate of Plaintiffs' void *ab initio* arguments. Taken to its logical conclusion, Plaintiffs' argument would mean that the very law at issue in *Dobbs* was void *ab initio*. The challenged Mississippi law banned most abortions "if the probable gestational age of the unborn human being has been determined to be greater than fifteen (15) weeks." Miss. Code Ann. §41-41-191(4)(b) (2018). And the sole question before the Supreme Court was "[w]hether all pre-viability prohibitions on elective abortions are unconstitutional." Pet. Br., *Dobbs v. Jackson Women's Health Org.*, 19-1392 (U.S. July 22, 2021); *Dobbs*, 142 S.Ct. at 2242 (noting that petitioners, respondents, and the Solicitor General each called on the Court to make a determination on *Roe* itself); *id.* at 2244 ("[Respondents] tell us that 'no half-measures' are available: We must either reaffirm or overrule *Roe* and *Casey*."). Because the Mississippi Legislature passed its 15-week prohibition under *Casey*'s framework, Plaintiffs' theory would have made that Mississippi law void *ab initio*, leaving the Supreme Court nothing to do in *Dobbs* but affirm the lower courts' injunction against that law. The Supreme Court obviously concluded otherwise, necessarily (if impliedly) rejecting Plaintiffs' view. *Dobbs*, 142 S.Ct. at 2243. Indeed, Plaintiffs' theory of constitutional law would mean that legislatures could never pass laws that test the boundaries, or seek reversal, of current precedent because each such law would "exceed[]" the "Legislature's authority." 2-ER-078.

Rejecting Plaintiffs' theory makes sense because it is the Constitution that can make a law void. Courts have long rooted their ability to declare a law void in the

authority of the Constitution. *Marbury v. Madison*, for example, explained that courts should not apply a law "in opposition to the constitution" because "a law repugnant to the Constitution is void." 1 Cranch (5 U.S.) 137, 178 & 180 (1803). In other words, it is the Constitution—not a court opinion—that renders a statute void. Both this Court and the Supreme Court recently confirmed this principle. This Court concluded that "[i]t is more accurate to state" that laws deemed unconstitutional by a court are "without effect, rather than treat them as nonexistent." *Close v. Sotheby's*, 909 F.3d 1204, 1210 n.1 (9th Cir. 2018) (cleaned up). Similarly, the Supreme Court explained that its decisions do not "enjoin challenged laws themselves." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 535 (2021). Here, "*Roe* was egregiously wrong from the start" and "was on a collision course with the Constitution from the day it was decided." *Dobbs*, 142 S. Ct. at 2243 & 2265. Thus, P.L. 20-134 was never void. At most, it was without effect in the courts while *Roe* remained in place. But Plaintiffs ask this Court to commit the same kind of error *Marbury* condemned by applying the defunct rule of *Roe* instead of the "paramount law" of the Constitution. *Marbury*, 5 U.S. at 177.

The same principles explain why legislative bodies can and do pass new laws despite existing precedent precluding their enforcement. In 2021, for example, Arkansas passed the Arkansas Unborn Child Protection Act, S.B. 6, 93d Gen. Assemb. Reg. Sess. §1 (Ark. 2021), which prohibited abortion except to save the life of the mother. The Eastern District of Arkansas enjoined enforcement of the law almost immediately. *Little Rock Family Planning Servs. v. Jegley*, 549 F. Supp. 3d 922, 936-37 (E.D.

Ark. 2021). After *Dobbs*, though, the Eighth Circuit reversed the preliminary injunction, permitting State officials to enforce the law. Likewise, P.L. 20-134 was enacted after *Roe*, and while it was never enforced because of the 1990 injunction, it remains on the books like the Unborn Child Protection Act and can now be enforced.

And analyzing P.L. 20-134's initial validity under the constitutional framework that *Dobbs* says is now (and always should have been) the law confirms that P.L. 20-134 easily passes muster. Rational basis merely requires a showing of "some conceivable legitimate purpose" for enacting the law. *Raidoo*, 75 F.4th at 1121. A court finds a law unconstitutional only if, for example, the law's enforcement is "directly contrary to the [law's] basic purpose" or is "wholly unconnected to any legitimate state interest." *Silveira v. Lockyer*, 312 F.3d 1052, 1089-91 (9th Cir. 2003). Here, the Guam Legislature determined that "life of every human being begins at conception" and that "unborn children have protectible interests in life, health, and well-being." P.L. 20-134, §1. Because of this finding, the Guam Legislature reasonably concluded the only way to protect "life" and those associated "protectible interests" was to prohibit abortion except in the narrowest of circumstances. *Id.*; *see also Ada*, 776 F. Supp. at 1426 (quoting the Governor as stating, "Having come to this conclusion, my choice is fairly simple …."). Plaintiffs may find this "illogical" or "unscientific" or even "unjust." *Metropolis Theater Co. v. City of Chicago*, 228 U.S. 61, 69-70 (1913). But the Legislature, not Plaintiffs, determines legislative purpose, and given this "conceivable" and "legitimate" purpose, the law survives rational basis review. *Raidoo*, 75 F.4th at 1121. Because the law easily

survives rational basis review, it was not void *ab initio*, and this Court must vacate the injunction.

### C. Public Law 20-134 has not been repealed by implication.

Respondents also argued below that Guam's statutes passed after 1990 that regulate abortion have repealed Public Law 20-134 by implication. *See* 2-ER-148–157; 2-ER-084. The district court's order is unclear about whether it ultimately agreed with Plaintiffs' implied-repeal arguments and based its holding that "Defendant AG has not met his burden under Rule 60(b)(5)" in part on those arguments. 1-ER-005. If the district court did so, this Court again should reverse because (like the void *ab initio* theory) this would be yet another untimely and improper effort by Plaintiffs to raise a new theory or claim via a Rule 60(b) opposition brief instead of in a new lawsuit—a process foul that by itself warrants reversal.

But Plaintiffs' implied-repeal argument also fails on the merits. This argument ignores "[t]he cardinal rule … that repeals by implication are not favored." *Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936); *see also Morton v. Mancari*, 417 U.S. 535, 549-50 (1974). Repeals by implication require a showing that the "intention of the legislature" is "clear and manifest." *Posadas*, 296 U.S. at 503. The Legislature's intent is not "clear and manifest," though, just because "two statutes produce differing results when applied to the same factual situation." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976). To the extent they can be reconciled, it is the "duty of the courts" to reconcile them. *Morton*, 417 U.S. at 551. Court "ha[ve] not hesitated to give effect to

two statutes that overlap, so long as each reaches some distinct cases." *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc.*, 534 U.S. 124, 142 (2001).

The Supreme Court identified "two well-settled categories of repeals by implication." *Posadas*, 296 U.S. at 503; *see also Sumitomo Const., Co., Ltd. v. Guam*, CVA00-019, CVA00-006, 2001 WL 1360135, at *4 (Guam Nov. 7, 2001). First, if "provisions in the two acts are in irreconcilable conflict," the later enacted provision carries the day. *Posadas*, 296 U.S. at 503. Where "there is some way to reconcile the two statutes with each other," however, the Court must abide by the cardinal rule. *Guam v. Quinata*, CR-81-0004A, 1982 WL 30546, at *2 (D. Guam 1982). Second, "if the later act covers the whole subject of the earlier one and is clearly intended as a substitute," it operates as a repeal. *Id.* Later-enacted statutes that are "merely affirmative, or cumulative or auxiliary," do not repeal prior-enacted statutes. *Wood v. United States*, 41 U.S. 342, 363 (1842). This "relatively stringent standard" has resulted in very few occasions where the Supreme Court has recognized an implied repeal. *Matsushita Electric Indus. Co. v. Epstein*, 516 U.S. 367, 381 (1996).

Here, Plaintiffs and GMH point to several abortion laws enacted after this Court affirmed the district court's decision in *Guam Soc'y of Obstetricians and Gynecologists v. Ada*, 776 F. Supp. 1422 (D. Guam 1990). But none of these laws presents an "irreconcilable conflict" with P.L. 20-134, nor do they otherwise repeal P.L. 20-134 by implication.

### 1.    *Reporting Requirements*

In 1994, the Guam Legislature passed Public Law 22-130, which altered slightly the definition of abortion and set reporting requirements for abortions. On the definition itself, both P.L. 20-134 and P.L. 22-130[4] define abortion as "the purposeful termination of a human pregnancy after implantation of a fertilized ovum, by any person, including the pregnant woman herself, with the intention other than to necessarily produce a live birth or to remove a dead unborn fetus." P.L. 22-130 elaborates on this definition by explaining what abortion "does not mean." In this sense, P.L. 22-130—the later enacted statute—"cover[s] a more generalized spectrum," where it is possible to comply with both definitions. *Ledezma-Galicia v. Holder*, 636 F.3d 1059, 1070 (9th Cir. 2010) (quoting *Traynor v. Turnage*, 485 U.S. 535, 548-49 (1988)). This follows from other portions of each respective act. P.L. 20-134 (unlawfully enjoined here) provided two exceptions to the definition of abortion because another provision of the same law prohibited providing or administering "abortions." Thus, the definition itself exempted certain conduct from the broad prohibition. P.L. 22-130, though, does not similarly prohibit abortions, so it did not likewise include the same exceptions. On the question of definition, then, what constitutes an abortion is the same for both laws, though the later-enacted law provides a more generalized definition. *Ledezma-Galicia*, 636 F.3d at 1070.

---

[4] The statute detailing the reporting requirements is included at 3-ER-292 for the Court's convenience.

Consider next the regulated conduct. P.L. 20-134 (unlawfully enjoined here) undoubtedly provides a stricter regulation: it prohibits "providing or administering drug[s] or employing means to cause an abortion." P.L. 20-134, §3. After that provision was enjoined, the Legislature then regulated the administrative process required for each abortion by requiring the completion of an abortion report. P.L. 22-130 (codified at 10 GCA §3218). The prohibition on abortion and the requirement for an abortion report are consistent with each other. The former regulates the circumstances under which an abortion can be provided. P.L. 20-134, §§2-3 (a person who provides an abortion is guilty of a third-degree felony subject to the two exceptions articulated in §2). The latter regulates the administrative process *after* the abortion is complete. 10 GCA §3218. Whether the law permits an abortion in almost all circumstances or almost no circumstances, the latter requirement is still the same: the attending physician must provide an abortion report. *Id.*; *see Radzanower*, 426 U.S. at 155. Both statutes can be "give[n] effect" even within the same set of factual circumstances. *J.E.M. Ag Supply, Inc.*, 534 U.S. at 144.

### 2. *Partial Birth Abortion Ban*

The Partial Birth Abortion Ban fares no better under Respondents' implied-repeal theory. As its title suggests, the Act prohibits performing a partial-birth abortion and imposes criminal penalties on anyone who violates the Act. 10 GCA §§91A103(a),

91A104.[5] The Act states that it "does not apply" if the abortion "is necessary to save the life of a mother" in certain circumstances. *Id.* §91A104. Like the reporting requirements, the Act does not repeal P.L. 20-134. "[P]eople can comply with both," so the court must "enforce both." *King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 740 (9th Cir. 2017) (quoting *Randolph v. IMBS, Inc.*, 368 F.3d 726, 731 (7th Cir. 2004)).

Turning first to the text itself, the Partial Birth Abortion Act does not irreconcilably conflict with Public Law 20-134, which categorically prohibits "[p]roviding or administering drugs or employing means to cause an abortion." Pub. L. No. 20-134, §3. From a practical standpoint, a woman can comply with both laws simultaneously. *See Morton*, 417 U.S. 551; *see also Ledezma-Galicia*, 636 F.3d at 1069. No set of factual circumstances exists where a woman would be permitted to seek an abortion under the Partial Birth Abortion Act but would be prevented from seeking an abortion under P.L. 20-134. *See Morton*, 417 U.S. at 551. The Partial Birth Abortion Act merely expands upon this previously enacted law. *Wood*, 41 U.S. at 362.

To the extent the text of the two statutes leaves any doubts about their compatibility, the Guam Legislature made its intent behind the Act clear. The Legislature expressly noted that "[n]othing in this Act *shall* be construed as creating *or* recognizing a right to an abortion." 10 GCA §91A110(a) (emphasis in original). The Partial Birth Abortion Ban serves as an express limitation on the practice of abortion,

---

[5] The Partial Birth Abortion Ban is included at 3-ER-279 for the Court's convenience.

and nothing in the Ban can be interpreted as implicitly expanding the practice. P.L. 20-134 simply prohibits abortion practice above and beyond what the Partial Birth Abortion Ban prohibits. The Legislature further noted that "[i]t is *not* the intention of this Chapter to make lawful an abortion that is currently unlawful." 10 GCA §91A110(b). Again, the Legislature intended to limit the circumstances under which an abortion would be permissible, making it clear the Legislature was not seeking to repeal P.L. 20-134. Rather, as discussed, the Guam Legislature sought to regulate the practice of abortion consistent with *Roe* and *Casey*. It explained that both *Roe* and *Casey* "recognized a governmental interest in protecting the life of a child during the delivery process." *Id.* §91A102; *see also Gonzales v. Carhart*, 550 U.S. 124, 145 (2007). This governmental interest wins out even under *Roe*, meaning the regulation falls within the scope of permissible state regulation in the abandoned *Roe* and *Casey* landscape. *Gonzales*, 550 U.S. at 168.

### 3. Parental Consent for Abortion Act

Three years after passing the Partial Birth Abortion Ban, the Guam Legislature passed the Parental Consent for Abortion Act, which sets the requirements for a pregnant minor female or incompetent female to obtain an abortion. 19 GCA §4A101(a).[6] If she is under the age of 18 and not emancipated, she must have written

---

[6] The Parental Consent for Abortion Act is included at 3-ER-265 for the Court's convenience.

consent from a parent or legal guardian, except in the case of an emergency. 19 GCA §4A102.

Once again, the Parental Consent Act can be harmonized with P.L. 20-134. If a pregnant female meets the requirements under the Parental Consent Act, then the Act does not further restrict her ability to seek an abortion. P.L. 20-134, though, imposes criminal liability for performing or administering an abortion except in narrow cases. The "duty of the courts" is to reconcile these statutes. Below, the Governor argued that the medical exception contained in P.L. 20-134, §2 and the medical exception contained in 19 GCA §4A104 are in conflict. 2-ER-146. Not so. The medical exception contained in P.L. 20-134 requires two physicians to determine that a pregnancy presents a "substantial risk" of endangering the life or health of the mother. And the medical exception in the Parental Consent Act says that consent is not required if "the attending physician certifies" that a medical emergency exists such that there is no time to obtain consent or if there is a judicial waiver. 19 GCA §§4A104, 4A107.

Read together, these provisions provide two separate (but reconcilable) tracks for abortion requirements depending on the age of the mother and the nature of the emergency. As for age, a competent woman over the age of 18 is subject only to the medical exception in P.L. 20-134. A woman who is not competent or who is under the age of 18 might be subject to either requirement depending on the emergency. If she is suffering from *any* medical emergency and "there is insufficient time to obtain the required consent," a physician may perform an abortion. 19 GCA §4A104. But if the

life or health of the mother is at risk, and sufficient time exists to obtain parental consent (or judicial waiver), then the woman must have two physicians independently determine that an abortion is permitted under P.L. 20-134, §2.

The Parental Consent Act covers medical emergencies more broadly, whereas P.L. 20-134 applies only when there is a "substantial risk" that the "life of the mother" will be endangered or her health will be "gravely impaired." This means that there might be circumstances where a minor woman facing a time constraint might be able to obtain an abortion while a woman over the age of 18 would not be able to obtain an abortion in those same circumstances. And there may be situations where the life or health of a minor mother is at risk, but because the threat is not immediate, she must obtain parental consent *and* the approval of two physicians. 19 GCA §4A104; P.L. 20-134 §2. These situations may be narrow, but even if the "two statutes produce differing results," *Radzanower*, 426 U.S. at 155, it is the "duty of the courts" to reconcile them, *Morton*, 417 U.S. at 551. Both statutes here "reach[] some distinct cases" and must be upheld. *J.E.M. Ag Supply, Inc.*, 534 U.S. at 144.

In one of the leading cases discussing implied repeal, a defendant was convicted under a statute that carried a maximum five-year prison term. *United States v. Batchelder*, 442 U.S. 114, 121 (1979). Another statute provided only a two-year maximum sentence for "essentially the same conduct." *Id.* The Supreme Court upheld both provisions, concluding that "the penalty provisions are fully capable of coexisting because they

apply to convictions under different statutes." *Id.* at 122. Like here, the statutes were not "positive[ly] repugnan[t]." *United States v. Borden Co.*, 308 U.S. 188, 199 (1939).

### 4. Women's Reproductive Health Information Act

The same year the Guam Legislature passed the Parental Consent Act, it also passed the Women's Reproductive Health Information Act, which updated the definition of abortion and set forth additional informed-consent requirements. 10 GCA §3218.1.[7] Consent is "voluntary and informed if and only if" specific conditions are met. 10 GCA §3218.1(b). The law requires the physician to inform the woman in person of specific medical information, including the risks of the proposed abortion method and the "probable gestational age of the unborn child at the time the abortion is to be performed." *Id.* §3218.1(b)(1). The law also requires the physician to provide in-person information about certain public benefits available to the woman. *Id.* §3218.1(b)(2). The physician must also provide printed materials in a private room so that the woman can certify she received all the information necessary before an abortion is performed. *Id.* §3218.1(b)(3)-(5). Like the other statutes, the Health Information Act does not determine when or under what circumstances an abortion may be performed, *see* P.L. 20-134 §2, but instead articulates information the physician must convey to the pregnant woman. 10 GCA §3218.1.

---

[7] The Women's Reproductive Health Information Act is included at 3-ER-468 for the Court's convenience.

This Court recently vacated a preliminary injunction of the in-person informed-consent requirement, concluding that the challenges "failed to show a likelihood of success on the merits" under rational-basis review. *Raidoo*, 75 F.4th at 1126. The Court concluded that Guam has an interest in protecting fetal life and preserving the integrity of the medical profession. *Id.* at 1123 (quoting *Dobbs*, 142 S.Ct. at 2283); *see also Washington v. Glucksberg*, 521 U.S. 702, 731 (1997) (the government "has an interest in protecting the integrity and ethics of the medical profession"); *Barsky v. Bd. of Regents of Univ. of N.Y.*, 347 U.S. 442, 451 (1954) (the State has "legitimate concern for maintaining high standards of professional conduct" in the medical field). The reporting law, parental consent law, partial birth abortion ban, and informed consent law each complement P.L. 20-134 by providing additional safeguards to the practice of abortion.

Ultimately this Court's role is not to ask whether the two statutes provide a wise regulatory regime. The Court, instead, has a duty to reconcile statutes unless the Legislature is "clear and manifest" in its intent to repeal the earlier enacted statute. *Posadas*, 296 U.S. at 503. No such intent appears here. P.L. 20-134 remains good law. The 1990 injunction must be vacated so P.L. 20-134 can finally take effect.

## CONCLUSION

For these reasons, the Court should reverse the district court's judgment and vacate the 1990 permanent injunction.

Dated: August 28, 2023                    Respectfully submitted,

                                          */s/ Kathleen L. Smithgall*
                                          Kathleen L. Smithgall
                                          Gilbert Dickey
                                          Consovoy McCarthy PLLC
                                          1600 Wilson Boulevard, Suite 700
                                          Arlington, VA 22209
                                          (703) 243-9423
                                          katie@consovoymccarthy.com
                                          gilbert@consovoymccarthy.com

                                          Tyler Green*
                                          CONSOVOY MCCARTHY PLLC
                                          222 S. Main Street
                                          5th Floor
                                          Salt Lake City, UT 84101
                                          (703) 243-9423
                                          tyler@consovoymccarthy.com

                                          *Counsel for Defendant-Appellant*

                                          *application for admission forthcoming

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1 because it contains 12,674 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionately spaced typeface using Garamond 14-point font.

Dated: August 28, 2023                    */s/ Kathleen L. Smithgall*