

LESLIE A. TRAVIS, *Legal Counsel*
leslie.travis@guam.gov
JEFFREY A. MOOTS, *Legal Counsel*
jeffrey.moots@guam.gov
**OFFICE OF THE GOVERNOR OF GUAM**
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
P.O. Box 2950, Hagåtña, Guam 96932
Office: (671) 473-1118 | Fax: (671) 477-4826

*Attorneys for Appellee*
*Lourdes A. Leon Guerrero, Governor of Guam*

## UNITED STATES COURT OF APPEALS
## NINTH CIRCUIT

| | |
|---|---|
| GUAM SOCIETY OF OBSTETRICIANS AND GYNECOLOGISTS, *et al,*. | |
| Plaintiffs-Appellees, | No. 23-15602 |
| v. | |
| DOUGLAS MOYLAN, | |
| Defendant-Appellant, | **REQUEST FOR JUDICIAL NOTICE** |
| v. | |
| LOURDES LEON GUERRERO, *et al.*, | |
| Defendants-Appellees. | |

Pursuant to Rule 201 of the Federal Rules of Evidence, Defendant-Appellee

Lourdes Leon Guerrero, Governor of Guam, by and through counsel, requests that

the Court take judicial notice of the following exhibits, submitted concurrently herewith:

1. <u>Exhibit 1</u> is the Brief of Respondent Government of Guam/People of Guam (Douglas B. Moylan, Attorney General of Guam) in *In re: Request of Lourdes A. Leon Guerrero, I Maga'Hågan Guåhan, Relative to the Validity and Enforceability of Public Law No 20-134*, Supreme Court of Guam Case No. CRQ23-001 (April 21, 2023).

FRE 201 provides that a court may take judicial notice of facts that are "not subject to reasonable dispute" in that they are either: (1) "generally known within the trial court's territorial jurisdiction," or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). FRE 201 further states that the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." FRE 201(c).

Exhibit 1 is a court filing from *In re: Request of Lourdes A. Leon Guerrero, I Maga'Hågan Guåhan, Relative to the Validity and Enforceability of Public Law No 20-134*, CRQ23-001. Court filings and orders that are relevant to the current proceedings are properly the subject of judicial notice. *See Betker v. U.S. Trust Corp. (In re Heritage Bond Litig.)*, 546 F.3d 667, 670 n.1 (9th Cir. 2008) ("This court may take notice of proceedings of other courts . . . if those proceedings have a direct relation to matters at issue.") (quoting *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (same); *United States v. Howard*,

1    381 F.3d 873, 876 n.1 (9th Cir. 2004) (holding courts may take judicial notice of

2    court records in other cases).

3        Accordingly, Governor Leon Guerrero requests that the Court take judicial

4    notice of Exhibit 1.

5        Respectfully submitted this 27th day of October, 2023 (PDT).

**OFFICE OF THE GOVERNOR OF GUAM**

*By: /s/ Jeffrey A. Moots*
_____
**JEFFREY A. MOOTS**
***Legal Counsel***

3

# EXHIBIT 1



Filed
Supreme Court of Guam, Clerk of Court

# CRQ2023-001

---

# IN RE:

# REQUEST OF LOURDES A. LEON GUERRERO, *I MAGA'HÅGAN GUÅHAN*, RELATIVE TO THE VALIDITY AND ENFORCEABILITY OF PUBLIC LAW NO. 20-134

---

## BRIEF OF RESPONDENT

## GOVERNMENT OF GUAM / PEOPLE OF GUAM
Douglas B. Moylan
Attorney General of Guam

---



**Douglas B. Moylan**
**Attorney General of Guam**
**Office of the Attorney General**
Civil Division
590 S. Marine Corps Drive
ITC Building, Suite 802
Tamuning, Guam 96913
*dbmoylan@oagguam.org*
(671) 475-2709/10

E-Received
4/21/2023 10:43:39 PM

CRQ2023-001

**SUPREME COURT OF GUAM**

IN RE:

REQUEST OF LOURDES A. LEON GUERRERO, *I MAGA'HÅGAN GUÅHAN*, RELATIVE TO THE VALIDITY AND ENFORCEABILITY OF PUBLIC LAW NO. 20-134

_____

**Certificate of Interested Parties**

On January 24, 2023, Justice Katherine A. Maraman disqualified herself from this proceeding based on her prior representation of one of the parties in a related case, *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422 (D. Guam 1990), *aff'd*, 962 F.2d 1366 (9th Cir. 1992). The Chief Justice appointed the Honorable John A. Manglona as Justice *Pro Tempore* on January 24, 2023.

The Attorney General certifies that no Justice on the panel has ever presided over any portion of this case or any related proceeding in the Superior Court or served as counsel of record or provided legal advice to any party to this appeal, and there are no known interested parties other than

/ / /

those participating in this case.

     Respectfully submitted this 21st day of April, 2023.

OFFICE OF THE ATTORNEY GENERAL

_____

Douglas B. Moylan
Attorney General of Guam

## Table of Contents

Table of Authorities ........................................................................ iii

Introduction .................................................................................. 1

Statement of Jurisdiction ............................................................. 1

Questions Presented for Declaratory Judgment .............................. 2

Statement of the Case.................................................................... 3

Summary of Argument ................................................................... 4

Argument ..................................................................................... 8

   I.       The Guam Legislature acted under its Organic Act authority and its acts cannot be deemed void *ab initio* because a law is "unconstitutional." ................................................................ 8

    A.      In entertaining the Petitioner's questions, the court risks violating the Separation of Powers doctrine.................................. 9

      1.  The doctrine of the Separation of Powers is fundamental to our form of government. .............................................. 9

      2.  The doctrine of the separation of powers bars the Court from substituting its policy for the Guam Legislature's... 11

    B.      Organic Act protects actions taken by the Legislative Branch to pass laws like Public Law 20-134, preventing judicial findings voiding their actions. .................................................. 17

    C.      Case law cited by Petitioner is inapplicable to this novel situation..................................................................................... 21

    D.      Petitioner's arguments have untenable policy implications. 22

   II.      Public Law 20-134 remains enforceable because subsequent legislation did *not* impliedly repeal it. ......................... 26

    A.      The question incorrectly presumes non-existent facts... 30

    B.      The June 24, 2022 reversal of *Roe v. Wade* reinstated Public Law 20-134.................................................................... 32

    C.      The four other statutes that address the subject of abortion can be read in light of an injunction upon Public Law 20-134. .............................................................................. 35

i

III.     The People of Guam propose, as a resolution to the issues in this case, that the referendum envisioned in Public Law 20-134 take place. ........................................................................ 40

A.     The referendum proposes an equitable solution to a thorny problem. .......................................................................... 42

B.     Allowing the referendum to go forward lets the Democratic process unfold. ........................................................ 44

C.     The referendum permits Guam's High Court to exercise judicial restraint. ........................................................................ 45

Conclusion ......................................................................................... 47

Certificate of Compliance ................................................................. 49

Statement of Related Cases.............................................................. 50

Certificate of Service ........................................................................ 51

## Table of Authorities

**Constitutional Provisions**

U.S. Const. art. 1 § 6, cl. 1 ............................................................ 17

**Cases**

*Bean v. State of Nevada*, 410 F. Supp. 963 (D. Nev. 1974) .......................... 9

*Brown v. Porter*, 149 F. Supp. 963 (N.D. Ill. 2016) .................................... 29

*Center for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 639
(S.D. Ohio 2016) ....................................................................... 45

*Coalition to Defend Affirmative Action v. Regents of the Univ. of Mich.*, 701
F.3d 466 (6th Cir. 2012) (Sutton, J., dissenting), *rev'd sub nom Schuette v.
BAMN*, 572 U.S. 291 (2014)) .................................................... 45

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022)
..................................................................................... passim

*Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589 (8th Cir. 1984) ... 43

*First Nat'l Bank of Millville v. Horwatt*, 162 A.2d 60 (Pa. Super. Ct. 1960)
..................................................................................... 28

*Granville-Smith v. Granville-Smith*, 349 U.S. 1 (1955) ........................ 21, 22

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422 (D.
Guam 199) .................................................................. 3, 23, 34

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366 (9th
Cir. 1992) ................................................................................ 3

*Haeuser v. Dep't of Law*, 97 F.3d 1152 (9th Cir. 1996) ............................. 9

*Hamlet v. Charfauros*, 1999 Guam 18 ...................................... 17, 18, 19, 20

*Hecht Co. v. Bowles*, 321 U.S. 321 (1944) ............................................ 42, 43

*In re Leon Guerrero*, 2021 Guam 6 ..................................................... 10

*Lewis Operating Corp. v. Super. Ct.*, 200 Cal. App. 4th 940 (Cal. Ct. App.
2011) .................................................................................. 10, 11

*Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988)
..................................................................................... 45

*People v. Blair*, 986 N.E.2d 75 (Ill. 2013) ........................................ 8, 9

*Pickens County v. Pickens County Water & Sewer Auth.*, 312 S. Ct. 218 (1994) ...................................................... 32

*Pinson v. U.S. Dep't of Justice*, 514 F. Supp. 232 (D.D.C. 2021) ......... 46, 47

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992) ..... 4

*Posadas v. Nat'l City Bank of New York*, 296 U.S. 497 (1936) ................... 30

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148 (1976) ........................... 30

*Roe v. Wade*, 410 U.S. 113 (1973) ................................................................ 3

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ........................................................ 46

**Statutes**

48 U.S.C. § 1421 *et seq.* ............................................................................... 9

48 U.S.C. § 1422 ......................................................................................... 10

48 U.S.C. § 1423a ....................................................................................... 10

48 U.S.C. § 1423c(b) ................................................................................... 17

48 U.S.C. § 1424 *et seq.* ............................................................................. 10

48 USC § 1421g(d)(1) ................................................................................... 1

9 GCA § 31.20 ............................................................................................ 32

9 GCA § 31.23 ............................................................................................ 32

10 GCA § 3207 .............................................................................................. 3

10 GCA § 3218 ............................................................................................ 38

10 GCA § 3218 .............................................................................................. 3

10 GCA § 3218.1 ...................................................................................... 3, 37

10 GCA § 91A101 *et seq.* ........................................................................... 37

10 GCA § 91A103 ....................................................................................... 38

10 GCA § 91A104 ....................................................................................... 38

10 GCA § 91A106 ....................................................................................... 38

10 GCA Ch. 91A ........................................................................................... 3

19 GCA § 4A102 ......................................................................................... 36

19 GCA § 4A107 ......................................................................................... 36

19 GCA § 4A109 ......................................................................................... 37

19 GCA §§ 4A101-4A111 ............................................................... 3, 36

20 GCA § 15115 ............................................................................ 43

20 GCA § 15120 ............................................................................ 42

20 GCA § 15133 ...................................................................... 25, 40

20 GCA § 15134 ............................................................................ 25

P.L. 20-134 (Mar. 19, 1990) ............................................... passim

P.L. 22-130:2 (May 31, 1994) ................................................ 3, 38

P.L. 29-115:1 (Nov. 18, 2008) ............................................... 3, 37

P.L. 31-155:2 (Jan. 4, 2012) .................................................. 3, 36

P.L. 31-235:2 (Nov. 1, 2012) ................................................. 3, 37

**Other Authorities**

Black's Law Dictionary 1307 (8th ed. 2004) .............................. 44

Norman J. Singer & J.D. Shambie, *Sutherland's Statutes & Statutory Construction*, § 23:6 (7th ed. 2007) ......................................... 32

**Rules**

GRE 201(b)(2) & (d) ..................................................................... 1

## Introduction

This is a declaratory judgment petition brought by Petitioner under 7 GCA § 4104, which allows the Governor to seek the High Court's interpretation of important questions of law, in exercise of its original jurisdiction. The Attorney General on behalf of his client, which is the Government of Guam ("People of Guam" or "People"), asks this High Court to dismiss this matter for lack of jurisdiction. 48 USC § 1421g(d)(1) ("The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam."). In the alternative, if the Supreme Court of Guam reaches Petitioner's questions, the People of Guam respectfully asks that the Court answer them as contended by the Attorney General.

## Statement of Jurisdiction

In its order of February 18, 2023, this High Court ruled that it has jurisdiction to issue a declaratory judgment in this matter pursuant to its authority under 7 GCA § 4104. On April 3, 2023, the People of Guam moved to dismiss this matter, arguing that the Court should decline to exercise jurisdiction at this time in order to allow a parallel proceeding on the same issue to proceed in an earlier Federal District Court case.[1] We also

---

[1] The Attorney General asks this Court to take judicial notice of the proceedings in that case, *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, Case No. 1:90-CV-00013 (D. Guam). *See* GRE 201(b)(2) & (d) ("A judicially noticed fact must be one not subject to

contend that because the District Court of Guam recently, on March 24, 2023, denied the motion to lift the 1990 injunction placed upon P.L. 20-134,[2] the High Court indicated in its earlier February 18, 2023 order that this § 4104 action would be "*unnecessary*."

The Government of Guam joins with the legal position of *amicus curiae* and former Senator Robert Klitzkie, who contends in his brief that this High Court has no jurisdiction over this matter due to the Petitioner's lack of standing.

### Questions Presented for Declaratory Judgment

1.    Whether the Organic Act of Guam, as it existed in 1990, authorized the Guam Legislature to pass an unconstitutional law, or the Guam Legislature acted *ultra vires* in passing Public Law 20-134 (aka "void *ab initio*"); and

2.    To the extent Public Law 20-134 is not void or otherwise unenforceable, has it been repealed by implication through subsequent legislation passed by the Guam Legislature?

---

reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. . . .   A court shall take judicial notice if requested by a party and supplied with the necessary information."). The Governor has made certain filings in the District Court case available through exhibits attached to her motion for judicial notice filed on March 10, 2023.

[2] The District Court's order denying the motion to vacate is attached as Exhibit 2 to the Attorney General's Declaration in Support of the Motion to Dismiss filed with this Court on April 3, 2023.

## Statement of the Case

This case begins with the enactment in 1990 of Public Law 20-134, which prohibits abortions on Guam, *except* to protect the mother's health, and mandates a referendum on the law's existence. Interested parties sued the Governor, the Attorney General, and other parties in the U.S. District Court of Guam, challenging the constitutionality of the law and seeking to enjoin it. The District Court held the law unconstitutional under the U.S. Supreme Court precedent set in *Roe v. Wade*, 410 U.S. 113 (1973), and issued an injunction that prevented enforcement of the law. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 776 F. Supp. 1422, 1431-32 (D. Guam 199). The Ninth Circuit Court of Appeals affirmed. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1374 (9th Cir. 1992).

The Guam Legislature subsequently passed several other laws regulating abortion, namely:

(1) The Partial-Birth Abortion and Abortion Report Law, P.L. 22-130:2 (May 31, 1994), codified at 10 GCA §§ 3207 & 3218;

(2) The Partial Birth Abortion Ban Act of 2008, P.L. 29-115:1 (Nov. 18, 2008), codified at 10 GCA Ch. 91A;

(3) The Parental Consent for Abortion Act, P.L. 31-155:2 (Jan. 4, 2012), codified at 19 GCA §§ 4A101-4A111; and

(4) The Women's Reproductive Health Information Act of 2012, P.L. 31-235:2 (Nov. 1, 2012), codified at 10 GCA § 3218.1.

In 2022, the U.S. Supreme Court issued its opinion in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), holding that "*Roe* was **egregiously wrong from the start**", *id.* at 2243 (emphasis added), and "the Constitution does not confer a right to abortion." *Id.* at 2279 (overruling *Roe* and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992)). On February 1, 2023, shortly after taking office, the Attorney General moved to vacate the District Court's injunction. In an order dated March 24, 2023, the District Court denied the motion and left the injunction against P.L. 20-134 in place.

In the meantime, the Petitioner filed this action on January 23, 2023, seeking declaratory judgment on a number of issues relating to the validity of P.L. 20-134. This High Court narrowed Petitioner's issues to two questions in its order of February 18, 2023, and directed the parties to brief the issues. The Attorney General hereby respectfully presents the Government of Guam's opposition to the position taken by Petitioner and Petitioner's supporting *amici curiae* (*Freeman et al.*).

## Summary of Argument

I. When enacting P.L. 20-134, the Guam Legislature acted under Organic Act authority. Despite the District Court finding the law unconstitutional at the time, this finding did *not* render the law void *ab*

*initio*. Applying the principle of void *ab initio* to constitutionality would disturb the process of determining constitutionality. That process requires enacting a law, challenging it, and having a constitutional court decide whether it adheres to the constitution. This process institutes the separation of powers.

The Legislature may identify public harms and seek to remedy them. We analogize the legislative function to the Speech or Debate Clause of the Organic Act. Senators have an Organic right to debate current problems. The Judiciary should not attempt to interfere with this discourse. The Separation of Powers Doctrine prevents the Judiciary from ordering the Legislature not to enact laws on certain subjects, thereby substituting its policy choices for those of elected representatives.

The Judiciary has a crucial responsibility to ensure those laws do not offend the original agreement between the State and its people. But the Organic Act authorizes that responsibility only after the Legislature enacts a law. Unleashing the principle of void *ab initio* in the constitutional context undermines the legislative process and the legal process of developing and correcting constitutional principles. If the U.S. Supreme Court had followed the doctrine of void *ab initio* in *Roe v. Wade*, it never would have decided *Dobbs*. Because of *Dobbs*, P.L. 20-134 was a constitutional enactment.

II.    The Senators who enacted the four abortion statutes after P.L. 20-134 knew a federal injunction prevented them from prohibiting abortion.  The question presented presumes non-existent facts.  The doctrine of implied repealer does *not* apply to this case because a legislature cannot impliedly repeal an invalid law (and one that has been enjoined).  In fact, the Guam Legislature did not try to repeal P.L. 20-134.  Instead, they sought to restrict abortion to the full extent that federal constitutional law permitted.  The four later abortion laws were *not* irreconcilable with P.L. 20-134 but stood in lieu of P.L. 20-134.

The U.S. Supreme Court's reversal of *Roe v. Wade* reinstated P.L. 20-134.  When a court finds a law unconstitutional that found an earlier statute unconstitutional, by reinterpreting the Constitution and extending the umbrella of constitutionality to the statute's purpose, the Court must reinstate the prior statute. Correcting the constitutional error eliminates the only impediment to the statute's legality, and the judiciary has no other reason or power to hold the prior statute invalid.  Without *Roe v. Wade*, the Guam Supreme Court would be striking P.L. 20-134 by fiat, an *ultra vires* act.

III.  The Attorney General urges the Guam Supreme Court to order a referendum.  P.L. 20-134 sought a referendum on its substance.  The Court

6

has authority to effectuate equity depending on the facts of a given case, and it may order an affirmative injunction.  A referendum will subject the 1990 law to current views on abortion while fulfilling *Dobbs*'s promise to return the question of abortion to the People.  It also enables the Court to exercise judicial restraint.

## Argument

### I.   The Guam Legislature acted under its Organic Act authority and its acts cannot be deemed void *ab initio* because a law is "unconstitutional."

This is a case of first impression, and unprecedented in Guam's legislative and judicial history.

It is the Courts who decide whether a law is "constitutional" or "unconstitutional," and this is only after a law is duly passed.  "When a statute is held facially unconstitutional, i.e., unconstitutional in all its applications, the statute is said to be void *ab initio*."  *People v. Blair*, 986 N.E.2d 75, 81 (Ill. 2013).  "The void *ab initio* doctrine is based on the theory that an unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed."  *Id.* (cleaned up).

However, when a court holds a statute "void *ab initio*," this does not mean that the statute "*never existed*," otherwise the court would be <u>repealing</u> the statute, thereby violating the Separation of Powers principle by taking onto itself a power that belongs only to the legislature.  *Id.*  When a court declares a statute unconstitutional and void *ab initio*, it means only that the statute was constitutionally infirm from the moment of its enactment and is,

therefore, "unenforceable" as of the time the Judiciary analyzes and decides the question. However, this determination is made after the bill has been passed into law; and is adjudicated in the Judiciary. Consequently, the court will give no effect to the unconstitutional statute and will instead apply the prior law to the parties before the court. *Id.* at 82. Moreover, the Judicial determination of "unconstitutionality" occurs after a legal process and can be subject to subsequent judicial "reversal," as was the situation here. *Dobbs*, 142 S. Ct. at 2262-65.

### A. In entertaining the Petitioner's questions, the court risks violating the Separation of Powers doctrine.

#### 1. The doctrine of the Separation of Powers is fundamental to our form of government.

The Organic Act of Guam, 48 U.S.C. § 1421 *et seq.*, "serves the function of a constitution for Guam." *Haeuser v. Dep't of Law*, 97 F.3d 1152, 1156 (9th Cir. 1996). As such, it supplies the organizing principles for the form of government in Guam, including "the constitutional doctrine of separation of powers. The doctrine is not expressly enunciated in the Constitution. It is, rather, a doctrine inferred from the organizing principles underlying the Constitution itself." *Bean v. State of Nevada*, 410 F. Supp. 963, 966 (D. Nev. 1974) (citing *Springer v. Philippine Islands*, 277 U.S. 189, 201 (1927)).

9

"Under the Organic Act, the government consists of three separate but co-equal branches of government." *In re Leon Guerrero*, 2021 Guam 6 ¶ 22 (citing 48 U.S.C. § 1421a ("The government of Guam shall consist of three branches, executive, legislative and judicial . . . .")). The Governor of Guam, as head of the executive branch, "shall be responsible for the faithful execution of the laws of Guam". 48 U.S.C. § 1422. "The legislative power of Guam shall extend to all rightful subjects of legislation not inconsistent with the provisions of this chapter and the laws of the United States applicable to Guam." 48 U.S.C. § 1423a. The Organic Act also establishes the judiciary for Guam. 48 U.S.C. § 1424 *et seq.*

Thus, under our form of government, the legislative branch makes public policy by enacting laws. The executive branch implements the laws passed by the legislature. The Courts may be called upon to interpret the laws or the manner in which they are being implemented. However, the Courts do not themselves decide what the public policy shall be.

"Public policy has nothing to do with the construction of a statute when the statute is clear on its face." *Lewis Operating Corp. v. Super. Ct.*, 200 Cal. App. 4th 940, 950 (Cal. Ct. App. 2011) (J. King, dissenting) (citing *Coalition of Concerned Communities, Inc. v. City of Los Angeles*, 34 Cal. 4th at 733, 737 (Cal. 2004)). When litigants bring matters of public

policy before the courts, the courts must remember that, "aside from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state." *Lewis*, 200 Cal. App. 4th at 950 (quoting *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 71 72 (Cal. 1998)).

"When the Legislature has spoken, the court is not free to substitute its judgment as to the better policy." *Lewis*, 200 Cal. App. 4th at 950 (quoting *City & County of San Francisco v. Sweet*, 12 Cal. 4th 105, 121 (Cal. 1995)). "When the legislative intent is clear from the plain meaning of the words we [the courts] are to follow it, whatever we may think of the wisdom, expediency, or policy of the act." *Lewis*, 200 Cal. App. 4th at 950-51 (quoting *California Teachers Ass'n v. Governing Bd. of Rialto Unified Sch. Dist.*, 14 Cal. 4th 627, 632 (Cal. 1997)) (internal quotation marks and brackets omitted).

### 2. The doctrine of the separation of powers bars the Court from substituting its policy for the Guam Legislature's.

Petitioner's legal interpretation applying a "void *ab initio*" logic is unmanageable to our three "separate but equal" branches of government, and Separation of Powers doctrine and associated legal processes.

Here, the Court should not substitute its own policy, at Petitioner's urging, for that of the Legislature. The right of the Legislature to pass bills into laws must continue unfettered by the two other branches. Only after passage should the Court's exercise their power. Petitioner would have the Judiciary interject itself into the Legislative process of passing a bill into law by finding that the act of the Guam Legislature in having passed P.L. 20-134 was void at the moment they passed it, and find that it is a "nullity" or "never existed." Such a construction is an impermissible intrusion of the Judicial Branch into the Legislative Branch.

Petitioner would also have this Judiciary rule upon the "constitutionality" of P.L. 20-134 at the moment the Legislature passes the bill to stop them from doing so, or have the Senators' actions immediately ruled void because a law like *Roe v. Wade* existed at the time. The construction not only interjects the Judiciary into the Legislative realm to discuss, debate and to pass a law, but to prevent Senators from even acting as their actions are "futile." It also deprives Senators from passing changes to an otherwise "unconstitutional" law before the bill becomes a law and is thereafter tested in the Courts.

The Organic Act processes require that the Judiciary not act until the piece of proposed legislation has been duly passed into law. Only then can

and should the Judiciary entertain a party's challenge to the law under the Court's legal processes, such as having proper subject matter and personal jurisdiction, and only then make a decision ruling upon the law's enforceability. Before such time, the Judiciary should respect the roles of the stewards of each branch of Government and wait until the legal question of "constitutionality" or enforceability is properly presented before it.

To reason otherwise, as Petitioner argues, threatens not only the fundamental separations of power between the Legislative Branch and the Judicial Branch, but is practically untenable. For instance, Petitioner's interpretation does not allow for Judicial mistakes or Judicial fallibility, such as occurred here. If this High Court were to adopt Petitioner's rule, then not only would the Senators when passing a law have to decide if an act they were taking was "unconstitutionally void" at the time they passed that bill, but their actions would be a "nullity" so the People would be deprived of that legislation before the Courts could rule upon its "constitutionality."

In other words, the Senators would become Judges of the legislation before it is passed out of the Legislature. More practically, the Senators could not decide if their act was a nullity because the legislation was "unconstitutional", because the determination of "unconstitutionality" is only decided after they act to make the bill into law, and later when the

Judiciary takes that statute and considers the legal issues then passes a ruling that is subject to appeal and ultimate determination years later. The legal paradox is akin to the "*chicken before the egg*" conundrum.

It is a practical impossibility to rule a statute void *ab initio* because the determination of whether a statute is "*constitutional*," or "*unconstitutional*" can only occur after the bill's passage into law, and the law is no longer inside the realm of the Legislative body. Practically speaking, how would the Senators know a bill is void because it's "unconstitutional," before that bill is tested, and the test for "constitutionality" can only be done after the bill is passed into law and subsequently the law is challenged across the street in the Courts?

Furthermore, the legal problem is exacerbated when the Judiciary makes a mistake and reverses an earlier determination of a law being "unconstitutional," and finds in fact that the law was "constitutional." The process of *not* pre-judging a law as constitutional or unconstitutional not only observes the Separation of Powers between the Judicial and Legislative Branches, but is a process that best protects against what occurred in the District Court case here, where the 1990 abortion law was struck down as "unconstitutional" under *Roe v. Wade* and *Planned Parenthood v. Casey*, then thirty years later the judicial process found its earlier decisions totally

14

in error, and the Judicial Branch reversed itself, finding that its earlier decision was (egregiously) wrong and that the abortion law P.L. 20-134 in fact did *not* violate the U.S. Constitution and is again presumed "constitutional."

A legal theory of void *ab initio* creates a flawed legal process which undermines the Legislative process in passing a bill into law and prevents the Judiciary from correcting incorrect decisions, especially when it requires decades to pass. It also deprives the People of Guam from benefiting from laws that were in fact "constitutional" and should have been passed to confer benefits upon our People. Petitioner's interpretation is legally flawed and practically detrimental to the processes of government and the People's right to receive the benefits of the laws passed by the Guam Legislature.

The Governor's interpretation of void *ab initio* constitutes an inorganic intrusion of the Judiciary into the Legislative co-equal branch of government that seeks to "negate" an act by the Legislature in passing a bill into law before it is duly enacted. Void *ab initio* is an impracticable concept to implement. The current legal process of having an injunction applied to an unconstitutional law best protects the separation of powers and accommodates judicial errors in interpretation. The imposition of an injunction to stop a law because of a legal principle allows the Senators to

fulfill their desires and duties in passing that law (for the benefit of the community), and also allows the Judiciary to correct itself later if the injunction they imposed was in error. It prevents the Judiciary from intruding upon the Legislative processes and respects the separation of powers and duties for each branch of government. The rule that the Judiciary acts only *after* the Legislature finishes passing its bill into law is the most practical way and allows the Judiciary to correct its mistakes as it did in this abortion law problem that has taken about 50 years for the Judiciary to develop, from finding unconstitutionality over many laws passed by the States and Territories in 1973, to now finding the Judiciary should never have been involved, as of June 24, 2022, in *Dobbs*, 142 S. Ct. at 2279 (overturning *Roe*).[3]

Finally, the void *ab initio* legal theory also inherently reflects an incorrect interpretation that the Judiciary has more authority over the Legislature because it says to the Senators that they should not even act because their action in passing a bill into law is a waste of time because the Courts say their bill is unconstitutional. However, the Courts might later find in fact the act they might have done in passing the law, was in fact "constitutional." Again, the better legal interpretation is simply to allow

---

[3] One must realistically ask, and who knows if the Judiciary might years or decades later again reverse itself finding the abortion issue again "unconstitutional."

bills to pass into law, and only then, after the legislative act is fully completed, to have the Courts decide its constitutionality and have the flexibility for the Courts to further decide the law's constitutionality as the circumstances warrant and then later possibly reconsider its actions again, *ad infinitum*. Such likewise is the process with the Legislature in passing a law, then a subsequent Legislature changing its "collective mind" and reconsidering its actions as a Legislature to repeal or amend a duly passed law.

### B. Organic Act protects actions taken by the Legislative Branch to pass laws like Public Law 20-134, preventing judicial findings voiding their actions.

Like the United States Constitution, the Organic Act contains a Speech or Debate clause. *Hamlet v. Charfauros*, 1999 Guam 18 ¶ 7. Our local Courts have previously respected the Separation of Powers doctrine recognizing the existence of Guam's Speech of Debate protection for our Legislative Branch for acts taken within the legislative realm. *Id*. The Organic Act provides that "[n]o member of the legislature shall be held to answer before any tribunal other than the legislature itself for any speech or debate in the Legislature." 48 U.S.C. § 1423c(b); *cf.* U.S. Const. art. 1 § 6, cl. 1 ("[F]or any Speech or Debate in either House, [Senators and

Representatives] shall not be questioned in any other Place.") (*cited in Hamlet*, 1999 Guam 18 ¶ 7 n.5).

The Supreme Court of Guam has recognized that "[t]he Speech or Debate Clause is deeply rooted in the principle of separation of powers between the three co-equal branches of government." *Hamlet*, 1999 Guam 18 ¶ 8. The Clause ensures that the legislative branch has "wide freedom of speech, debate and deliberation without intimidation or threats from the Executive Branch[,] . . . serves to protect the legislative branch from a possible hostile judiciary[,] . . . [and] recognize[s] the danger posed to the legislature by the other branches of government." *Id.* (cleaned up).

In *Hamlet*, the court held that the Speech or Debate Clause protected a Guam senator who played a recording of a private telephone conversation during an ongoing legislative session because the Senator's act fell "within the sphere of legitimate legislative activity." *Id.* ¶ 21. This High Court found that the Senator used the recording "as part of a general discussion surrounding the override of a bill vetoed by the Governor[, . . .] centered upon the alleged abuse in spending of federal emergency funds". *Id.* As a result, the Senator's action amounted to "speech and debate occurring on the session floor . . . [and was] an integral part of the legislative process." The

Court therefore refused to violate the Separation of Powers Doctrine by preventing a party "from interfering with this type of discourse." *Id.* ¶ 22.

Here, consistent with the Speech or Debate Clause, the Supreme Court of Guam is once again asked in this case to respect and protect the Legislative Branch's right to discuss, consider and pass bills into law, uninhibited by the Executive and Judicial Branches. The Court should let the Legislative Branch complete its action in duly considering the benefits or harms of a bill, and to duly act to pass a bill into law. The Courts should not be interfering with bills by predetermining them as being "void *ab initio*." In contrast, P.L. 20-134 in fact was never "void *ab initio*" because *Dobbs* has now found that the underlying cases that stopped its enforcement were bad law. *Dobbs*, 142 S. Ct. at 2243.

The Court should let the process of our three branches of government complete themselves before intrusion occurs. Allow the Legislative Branch to pass a law unmolested. Then, the law becomes subject to the Judicial Branch and the Court's deciding that law's fate upon the leaving the Legislature's jurisdiction, upon proper presentation of that law being challenge. Such was the case in P.L. 20-134. The governmental process concludes with the Judicial Branch either finding constitutionality or unconstitutionality, then imposing an injunction upon the law, or not—and

allowing for further reconsideration later in time as to whether the injunction should remain or not. As *Dobbs* has shown us, no law is "clearly" unconstitutional. *Dobbs*, 142 S. Ct. at 2243.

The governmental "process" is just as important, and we contend more important, than just P.L. 20-134. Whether the law under scrutiny be an anti-abortions statute, or a jay walking law, the procedure in which the law must first be certified as a law by the Guam Legislature and the Governor's role in creating that law, must mature and complete, before the Courts can determine that law's constitutionality. And even that Judicial determination of constitutionality is subject to future challenge and reconsideration under *Dobbs*, 142 S. Ct. at 2243.

The existence of the Legislature's Speech or Debate Clause and protection from intrusion by the Executive Branch or the Courts into the Legislative realm was upheld on Guam previously in *Hamlet*. *Hamlet*, 1999 Guam 18. That Supreme Court of Guam opinion should once again guide us in establishing a legal framework respectful of a co-equal branch of government to handle not just P.L. 20-134, but all other similar laws that will in the future come before the Courts. The Courts should let the Legislature finish its act, and then, and only then, should the Courts involve themselves. That legal process creates the most flexibility to handle future

cases to *Dobbs* – like fact patterns, as well as following the *stare decisis* holdings like *Hamlet* and this High Court's respect for a co-equal branch of government whose acts in passing laws are intended to benefit our People and community.

### C. Case law cited by Petitioner is inapplicable to this novel situation.

Petitioner argues that the fact that the state of the law after *Dobbs* permits the Guam Legislature to pass a restrictive abortion law today does not mean that the Guam Legislature could have passed such a law earlier, because "*Dobbs* does not purport to reach thirty years into the past to grant the 20th Guam Legislature authority where it had none." Pet'r's Br. at 21-22. In support of her argument, the Petitioner cites to *Granville-Smith v. Granville-Smith*, 349 U.S. 1 (1955). There, the Legislature of the Virgin Islands enacted a divorce law that allowed a plaintiff to make a *prima facie* showing of domicile if the plaintiff maintained a continuous presence in the Virgin Islands prior to filing for divorce. *Id.* at 2-3.

The *Granville-Smith* Court held that Congress conferred upon the Virgin Islands Legislature the power to enact laws that have a "local application" limited "to subjects having relevant ties within the territory". *Id.* at 9-10. Because the divorce law was "designed for people outside the

Virgin Islands" *id.* at 11, the Court held that the Virgin Islands Legislature exceeded its Organic Act authority in enacting the law. *Id.* at 16.

Here, on the other hand, P.L. 20-134 applies to everyone in the territory. It was not "designed for export" to reach persons outside the territory like the Virgin Islands law. Therefore, the *Granville-Smith* case does not support the Petitioner's contention that P.L. 20-134 is inorganic.

### D. Petitioner's arguments have untenable policy implications.

The process is more important than the arguments about P.L. 20-134, and the legal issue presented in this § 4104 action will have lasting effects upon the administration of justice. As mentioned earlier in Part I.A.2, *supra*, Petitioner's void *ab initio* argument suffers from a practical application problem. It poses the "*chicken before the egg*" problem and is not conducive to future correction of Judicial mistakes. First, saying that a Senator's action in passing a bill is "void *ab initio*" presupposes that a judicial determination on that same bill exists before the Senators consider a bill. This is not how the facts normally play out.

Ordinarily a law is passed and no further Legislative action takes place. Then, if a party brings it before the court, the Judiciary can consider that law and pass judgment. In the case of P.L. 20-134, an injunction properly issued based upon *existing* United States Supreme Court precedent.

*See Guam Soc'y of Obstetricians*, 776 F. Supp. at 1426 (imposing injunction) (citing *Roe v. Wade*, 410 U.S. 113). The legal process also allowed for *Dobbs* to be decided, and mandated that injunctions issued earlier should be dissolved because the case authority and legal reasoning were simply wrong. The reality of this situation applied to P.L. 20-134 is that the 1990 decision imposing the injunction was wrong in 1990 and, according to the U.S. Supreme Court's reasoning in *Dobbs*, P.L. 20-134 was a constitutionally valid law passed by the Guam Legislature. Petitioner's interpretation does not work in these real life situations of Judicial reconsideration and reversal.

Under Petitioner's void *ab initio* argument, the Legislature's act in passing P.L. 20-134 was invalid at the time the Legislature passed it in 1990, "*end of story*." Such, however, was not the case, as the *Dobbs* decision in 2022 corrected the erroneous *Roe* decision that the District Court relied upon in 1990. The administration of justice demands that we not make the same mistake by "*setting into stone*" pronouncements like "void *ab initio*," otherwise the Legislature's act in 1990 (or at any other time) is simply a nullity when the Legislature passes a bill into law. The People of Guam would forever be deprived of the otherwise valid law under Petitioner's methodology.

23

The logic is fundamentally flawed and incapable of later Judicial correction for its errors (in determining the unconstitutionality in the case of P.L. 20-134). The "cleaner" and more workable legal process and procedure would be to allow a bill to pass into law, clear the Legislative realm, then either impose a Judicial injunction to "strike it" and allow for later court proceedings in the Judicial Branch to potentially correct an earlier error or injustice. We must not forget that the reasons a law is passed is to confer a benefit upon our People. To callously and impetuously presume that a law is wrong and unconstitutional prevents future correction that acknowledges the fallibility of us all, whether we be senators, governors or judges, and the flexibility in our legal analysis to "fix" a mistake. The opposition provides no workable solution to this fallibility problem.

Also, to apply a void *ab initio* framework, we ignore an important precept: that each two-year Legislature is different. The Judiciary's application of a void *ab initio* approach would effectively negate the beneficial actions by a particular set of senators who only exist for that two-year period, and the benefits that could arise from that particular mix and the laws they pass. In other words, application of the void *ab initio* theory to a P.L. 20-134 fact pattern would destroy that public law forever and prevent allowing for the public law to be enforced based upon a Judicial

24

error that needed to be corrected later in time. It is also unfair since the Courts would be given the ability to change its decisions, but the Legislature would not be able to have their otherwise good law to be enforced because a "void *ab initio*" rule would forever kill a law that should have been benefiting our People and community.

Under Petitioner's void *ab initio* argument, the People would never be able to benefit from P.L. 20-134 because it was unconstitutional, when in fact it was "constitutional" in 1990 because the Supreme Court of the United States made an "*egregious error from the start*" in having decided *Roe*. *Dobbs*, 142 S. Ct. at 2243 (emphasis added). "An interpretation must be reasonable." 20 GCA § 15134 (maxim of jurisprudence). Applying an injunction for so long as the Courts deem it appropriate is the most sound "administration of justice." It allows for the flexibility needed for the Judiciary of Guam to potentially correct errors versus forever striking a law, finding out later the law should not have been stricken, then *not* allowing that law to be enforced since it was always good law. Our interpretation not only addresses the P.L. 20-134 situation, but any future similar situations. "An interpretation which gives effect is preferred to one which makes void." 20 GCA § 15133 (maxim of jurisprudence). It also respects the Separation of Powers doctrine, and restrains judicial overreach.

## II.  Public Law 20-134 remains enforceable because subsequent legislation did *not* impliedly repeal it.

This is a case and question of first impression. Whether a subsequent law impliedly repealed P.L. 20-134 is a "*loaded question*."  In analyzing this legal issue, one must first recognize that implied repealer cases normally do not analyze a Senator's later actions in light of a prior law being enjoined, and those subsequent Senators being *fully aware* that an injunction prevented them from passing the same law in a futile attempt.

*How can one (impliedly) repeal a law that does not exist?* Petitioner's declaratory judgment question presupposes a substantial fact that does not exist.  P.L. 20-134 did not exist after the 1990 injunction occurred.  Therefore, you cannot even compare that law against the 4 subsequently passed laws to evaluate any form of "repeater."

In this case we are dealing with the 1990 20th Guam Legislature that had its P.L. 20-134 prohibiting abortions enjoined by the Courts. Every law after that law not only attempted to restrict abortions, like P.L. 20-134 had done, yet also had Senators acting with the clear understanding that P.L. 20-134 was enjoined so they could not pass another anti-abortion law. In other words, each Senator acted with full knowledge that he or she could not again prohibit abortions on Guam as P.L. 20-134 had tried to do. This is an important, distinguishing fact and critical framework in which the

26

Supreme Court of Guam should scrutinize Petitioner's argument for "implied repealer."

Petitioner's implied repealer argument fails when one simply considers that the later legislatures passed the 4 partial anti-abortion laws understanding that they could not pass a full anti-abortion law like P.L. 20-134 because an injunction existed. The Senators fully understood they could not pass another law fully outlawing abortions.

In her Request for Declaratory Judgment (7 GCA § 4104), Petitioner states:

> Finally, if the court finds that P.L. 20-134 is not void, invalid, or otherwise unenforceable, it has been repealed by implication by subsequent laws enacted by the Guam Legislature. "It is a well settled rule that later statutes repeal by implication earlier irreconcilable statutes." *People at Territory of Guam v. Quinata*, 1982 WL 30546, at *2 (D. Guam App. Div. 1982), *aff'd*, 704 F.2d 1085 (9th Cir. 1983); *see also Sumitomo Constr. Co., Ltd. v. Gov't of Guam*, 2001 Guam 23 ¶ 16 ("Implied repeals can be found in two instances: (1) where the provisions in the two acts are in irreconcilable conflict, or (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute.") (internal quotations omitted).

Request for Declaratory Judgment ¶ 27 (Jan. 23, 2023).

Petitioner goes on to state:

> P.L. 20-134 cannot be reconciled with subsequent laws passed by the Guam Legislature that govern abortion on Guam.

Request for Declaratory Judgment ¶ 28 (Jan. 23, 2023). However, this fact pattern is substantially different than the cases Petitioner cites. The Senators post 1990 20th Guam Legislature were not passing laws that were "irreconcilable with P.L. 20-134." They were passing laws that were in lieu of P.L. 20-134 because P.L. 20-134 did not exist. The picture of what happened is crystal clear. They acted to restrain abortions as much as they could because they knew that the Courts stopped their earlier attempt to make abortions illegal altogether. The Governor's cases are not on point.

In *First Nat'l Bank of Millville v. Horwatt*, 162 A.2d 60 (Pa. Super. Ct. 1960), the court there stated: "In determining whether a prior act is repealed by implication, the question is exclusively one of legislative intent." *Id.* at 63 (holding that adoption of the Uniform Commercial Code did not impliedly repeal the Pennsylvania Motor Vehicle Sales Act). In this case the legislative intent in the four laws were consistent with P.L. 20-134 in that they were attempting to restrict an abortion in light of the Senators inability to outright outlaw it as they tried to do but had the original law enjoined. The four laws passed after P.L. 20-134 never repealed P.L. 20-134 because the Senators knew full well that there was no law to repeal because that law was already enjoined.

28

Normally, "the implied repeal doctrine provides that if two statutes are so inconsistent that the provisions of both cannot reasonably be construed to be in effect at the same time, the later repeals the earlier to the extent of such inconsistency, even in the absence of a repealing clause." *Brown v. Porter*, 149 F. Supp. 963, 972 (N.D. Ill. 2016) (citing *Campbell v. City of Chicago*, 119 F.2d 1014, 1017 (7th Cir. 1941) (quotation marks omitted)). Again, the problem with this "traditional" treatment of an implied repealer fact pattern is that you have a valid law that was originally passed. Here, that original law did not exist because it was earlier enjoined in 1990. There was nothing to repeal. Had they known that P.L. 20-134 was still good law, then the Senators would not have passed the 4 laws, or would have taken an affirmative step to repeal P.L. 20-134. Those are not the facts of our reality.

The law <u>disfavors</u> implied repeals but will allow them under the following limited circumstances:

> (1) Where provisions in the two acts are in *<u>irreconcilable</u>* conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and
>
> (2) If the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act.

*Posadas v. Nat'l City Bank of New York*, 296 U.S. 497, 503 (1936); *accord Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976). In any case, there must be a "clear and manifest" intent by the legislature to repeal, otherwise "the later act is to be construed as a continuation of, and not a substitute for, the first act and will continue to speak, so far as the two acts are the same, from the time of the first enactment." *Posadas*, 296 U.S. at 503 (emphasis added). Here, not only did P.L. 20-134 not exist when they passed the 4 subsequent anti-abortion laws, but the 4 law that the Senators passed clearly are trying to restrict the act of an abortion. They were not laws mandating that abortions are legal on Guam, nor did they simply state that P.L. 20-134 was repealed. The reason they did not state that in the laws was: (1) the Senators already knew P.L. 20-134 was impossible to pass due to the injunction, and (2) they did not intend to allow abortions because the laws they passed were trying to restrict the ability to freely have an abortion.

### A. The question incorrectly presumes non-existent facts.

When one considers an "implied repealer" situation, one presumes that a valid law existed. In this case P.L. 20-134 did not exist for the Senators to consider to repeal. In fact, the exact opposite occurred. Specifically, in the Legislatures subsequent to the 20th Guam Legislature that passed P.L. 20-134, the legislators all knew and recognized that they

could not prohibit abortions because the U.S. District Court of Guam in 1990 struck down P.L. 20-134 as unconstitutional.

Not only did each subsequent Guam Legislature after 1990 that touched the issue of reproductive rights pass laws trying to restrict abortions consistent with P.L. 20-134, but they did so with the full knowledge that they could not logically re-pass their anti-abortion law, P.L. 20-134, because it was under an ongoing injunction.

Moreover, Petitioner's reasoning ignores the obvious question: "How can you repeal a law that is non-existent?" This is the reality that each post-1990 Legislature (post-1990 P.L. 20-134 injunction) operated under. Petitioner's flawed reasoning would have the Courts start with the presumption that the Senators were unaware that a 1990 injunction prevented them from passing another anti-abortion law. Such is factually *not* the case. Instead, the Senators proceeded by introducing, considering and then passing four bills into law that did everything possible to slow and restrict abortions as much as possible in light of the 1990 injunction upon their former law that completely banned an abortion.

In contrast, had the post 1990 Guam Legislatures intended to do so over the past 30 years, they could have simply *repealed* P.L. 20-134 and statutorily allowed abortions on Guam. They did just the opposite. Each of

31

the four laws in fact restricted abortions as much as they could do to preserve the life of the unborn fetus, understanding that a 1990 injunction prevented them from passing another law again stopping abortions on Guam. Also, for each of the four laws passed after the 1990 injunction, the Senators could have simply identified the code sections added by P.L. 20-134 and repealed them.[4] They did not.

Petitioner's argument is *not* applicable to this fact pattern. It ignores important facts inapplicable to the interpretative laws regarding implied repealer statutory analysis. Petitioner's interpretation should not be adopted.

### B. The June 24, 2022 reversal of *Roe v. Wade* reinstated Public Law 20-134.

When a Supreme Court finds a law or principle unconstitutional, and that law found a prior statute unconstitutional, the change in constitutional law reinstates the prior statute into the legal firmament. The prior statute that an earlier court struck based on misinterpreting the Constitution becomes valid law again. *See Pickens County v. Pickens County Water & Sewer Auth.*, 312 S. Ct. 218, 220 (1994) (*cited in* Norman J. Singer & J.D. Shambie, *Sutherland's Statutes & Statutory Construction*, § 23:6 (7th ed. 2007)). The only reason the initial statute had no legal effect is because a

---

[4] Senators could have included in the four post-1990 laws a reference to repeal 9 GCA §§ 31.20 and 31.23 (enacted by P.L. 20-134).

constitutional court misinterpreted the Constitution. A re-interpretation that corrects the error eliminates the only impediment to the statute's legality.

The striking of P.L. 20-134 was passed to confer a benefit upon Guam's People. The fact that the Judicial Branch made an "egregious error" or mistake should not deprive our People of the benefits of that legislation. In fact, an Organic Act imperative exists to apply equity to ensure that the 1990 law is immediately applied to right the "wrong."

What other effect should the later Constitutional Court's interpretation have? For what reason could the later court rely on to hold the original statute invalid? None exists. If a legislature satisfies all constitutional requirements to enacting a law, the Constitution automatically bestows legality on the act. Reversing a decision finding that a statute violates the Constitution places that statute in the same legal position prior to the faulty judgment: the Legislature enacted a valid law following constitutional standards. To hold otherwise strikes a statute by fiat and violates the Separation of Powers. The striking is *ultra vires* because it does not abide by the constitutional rules. A court must have a reason originating in the Constitution to invalidate a Legislature's act. Without that reason, it has no power to hold a law invalid.

In this case, *Dobbs* reversed *Roe*, holding that the United States Constitution recognizes no fundamental right to abortion. *Dobbs*, 142 S. Ct. at 2242. The District Court of Guam held P.L. 20-134 unconstitutional because it violated *Roe*'s holding that the Constitution grants women a fundamental right to an abortion. *Guam Society of Obstetricians*, 776 F. Supp. at 1428-29. Without *Roe*, the District Court of Guam has no authority to enjoin P.L. 20-134. After *Dobbs*, the Organic Act guarantees P.L. 20-134's validity.

After *Dobbs*, Guam Courts must try to read all five abortion statutes together, recognizing that only four have been enforceable since P.L. 20-134 has been enjoined since 1990. Courts can read the Reporting Statute and the Partial-Birth Abortion law together with P.L. 20-134 because physicians still could report performing abortions that jeopardize a woman's health, and partial-birth abortions represent a specific instance of a more general ban. But reinstating P.L. 20-134 removes the Parental Consent Law and the Informed Consent Law from Guam's statutory code. The bottom line is that the four subsequently passed laws must be read in the light that the Senators knew that they could not pass a full anti-abortion law.

These laws had no constitutional infirmity, but demanding consent for a minor to obtain an optional abortion, and requiring physicians to inform all

women about the stakes of an optional abortion, violate the ban on all optional abortions. The laws presume the constitutionality of *Roe*. No implied repeal occurred at the time these statutes were enacted because P.L. 20-134 remained invalid. But neither Legislature that enacted the Parental Consent Law nor the Legislature that enacted the Informed Consent Law would have done so had not the U.S. Supreme Court erred by misinterpreting the Constitution, which enabled the District Court to find P.L. 20-134 invalid. In Guam, *Dobbs* rendered the Parental Consent and the Informed Consent laws moot. The Legislature itself always can amend P.L. 20-134 based on the will of the people.

## C. The four other statutes that address the subject of abortion can be read in light of an injunction upon Public Law 20-134.

The statute in question, P.L. 20-134, was a sweeping ban on abortion, setting criminal penalties for persons (1) providing drugs or employing other means to cause an abortion, (2) submitting to an operation or to the use of other means with intent to cause an abortion; and (3) "soliciting" a woman to submit to an abortion. P.L. 20-134 also purported to repeal the statute which governed abortions at that time, which were enacted in 1978 as part of the original Criminal and Correctional Code.

Subsequent to the U.S. District Court of Guam enjoining the enforcement of P.L. 20-134, the Guam Legislature passed four statutes relating to abortion. In 2012, the 31st Guam Legislature passed P.L. 31-155, the Parental Consent for Abortion Act ("PCAA"), which is codified at 19 GCA § 4A101.

The PCAA prohibits a person from performing an abortion upon a pregnant unemancipated female under the age of eighteen, unless the person first obtains the written consent of both the pregnant person and one of her parents or a guardian. *See* 19 GCA § 4A102. Section 4A107 of the PCAA further authorizes the Superior Court of Guam to waive the consent requirement for a minor if the court finds, by clear and convincing evidence, that the minor is sufficiently mature or well-informed to decide whether to have an abortion, and to issue an order authorizing the minor to consent to the performance of an abortion without the consent of a parent or guardian. *See* 19 GCA § 4A107. Section 4A109(a) of the PCAA provides that any person who performs an abortion with knowledge that the person upon whom the abortion is to be performed is an unemancipated minor is guilty of a third degree felony. Any person not authorized to provide consent for a minor to have an abortion who provides consent is guilty of a third degree

felony. 19 GCA § 4A109(c).  Any person who coerces a minor to have an abortion is guilty of a misdemeanor.  19 GCA § 4A109(d).

Later, in 2012, the 31st Guam Legislature also passed P.L. 31-235, the Women's Reproductive Health Information Act of 2012 (the "HIA"). The HIA, codified at 10 GCA § 3218.1, regulates general consent to abortion.  Under § 3218.1(b), a person provides "voluntary and informed consent" to abortion when at least 24 hours prior to obtaining an abortion, the physician gives the patient specific information regarding the procedure in person, including a description of the method, the associated medical risks of the proposed abortion, the probable gestational age of the unborn child at the time the abortion is to be performed, the medical risks associated with carrying the pregnancy to term and any need for anti Rh immune globulin therapy, risks for declining such therapy, and costs associated therewith.

In 2009, the 29th Guam Legislature passed P.L. 29-115, the Partial Birth Abortion Ban Act of 2008, codified at 10 GCA § 91A101 *et seq*.  It prohibits a person from knowingly performing or attempting to perform a partial-birth abortion, defined as vaginally delivering a living fetus until either the entire fetal head is outside the body of the mother in the case of breach presentation, for the purpose of performing an act the person knows

will kill the partially-delivered living fetus, and performing an overt act that kills the partially delivered living fetus. 10 GCA §§ 91A103 & 91A104. A person who performs a partial-birth abortion shall be guilty of a third degree felony. 10 GCA § 91A106.

In 1994, the 22nd Guam Legislature passed P.L. 22-130, which, in relevant part, repealed Chapter 3 of Title 10, Guam Code Annotated and added a new Chapter 3 to Title 10. Title 10 GCA § 3218 requires that individual reports for each abortion are completed by the attending physicians and transmitted to the Office of the Vital Statistics of the Department of Public Health and Social Services, and that such reports shall be confidential and not contain the name of the mother. 10 GCA § 3218. The Office of the Vital Statistics shall receive and retain the reports, and publish a statistical report based on the date on an annual basis.

Petitioner incorrectly argues that these four statutes form a complex regulatory scheme that recognizes and regulates abortion as a lawful medical procedure on Guam. Petitioner reaches this conclusion by concluding that these four statutes repealed, by implication, P.L. 20-134, the abortion ban statute enacted in 1990. The logic is fundamentally flawed because P.L. 20-134 did not exist and the Senators clearly knew it when

they passed the four laws. Petitioner's logic would only have a "leg" to stand on had the injunction upon P.L. 20-134 not existed.

The more tenable explanation is that the Senators passed four laws trying to re-establish as many restrictions as they could, if they could not outlaw abortions altogether like they tried to do in 1990. *Dobbs* mandates lifting the injunction, so that the benefits of P.L. 20-134 intended by the Guam Legislature finally are enforced as the Legislative Branch intended.

### III. The People of Guam propose, as a resolution to the issues in this case, that the referendum envisioned in Public Law 20-134 take place.

An "*equitable resolution*" best serves the People of Guam. "An egregious wrong occurred from the start." *Dobbs*, 142 S. Ct. at 2243. Those words are normally not seen in local decisions, and practically never seen coming from the Supreme Court of the United States. Moreover, the Supreme Court of the United States stated:

> We do not pretend to know how our political system or society will respond to today's decision overruling *Roe* and *Casey*. And even if we could foresee what will happen, we would have no authority to let that knowledge influence our decision. We can only do our job, which is to interpret the law, apply longstanding principles of *stare decisis*, and decide this case accordingly.
>
> We therefore hold that the Constitution does not confer a right to abortion. <u>*Roe* and *Casey* must be overruled, and the authority to regulate abortion must be returned to the people and their elected representatives</u>.

*Dobbs*, 142 S. Ct. at 2279 (emphasis added).

In light of the "*egregious wrong*" authored by the Judicial Branch, the question of whether abortions should or should not be permitted on Guam must be placed before the People of Guam to decide pursuant to the mandate created by the Legislative Branch. "An interpretation which gives effect is preferred to one which makes void." 20 GCA § 15133 (maxim of jurisprudence).

40

Public Law 20-134 expressly provides for an abortion law **referendum** *for the People of Guam to decide this important question*:

(a) There shall be submitted at the island-wide general election to be held on November 6, 1990, the following question for determination by the qualified voters of Guam, the question to appear on the ballot in English and Chamorro:

"Shall that public law derived from Bill 848, Twentieth Guam Legislature (P.L. 20-___), which outlawed abortion except in the cases of pregnancies threatening the life of the mother be repealed?"

In the event a majority of those voting "Yes", such public law shall be repealed in its entirety as of December 1, 1990.

(b) There is hereby authorized to be appropriated to the Election Commission (the "Commission") sufficient funds to carry out the referendum described in this Section 7, including but not limited to the cost of printing the ballot and tabulating the results. In preparing the ballot, the Commission shall include in the question the number of the relevant public law.

P.L. 20-134, § 7 (Mar. 19, 1990).

Guam's High Court, instead of looking for ways to invalidate the law, should instead be open to ways to make the referendum happen. This is the Democratic way, and equitably fixes a bad situation that has taken over three decades to reach this point. The People have been deprived of a law duly passed by the Guam Legislature for 33 years, which was intended to provide

a public benefit. "The law respects form less than substance." 20 GCA § 15120 (maxim of jurisprudence).

## A. The referendum proposes an equitable solution to a thorny problem.

A referendum not only applies equity to an unprecedented situation exacerbated by the Federal Judiciary, but furthers the ends of both the Supreme Court of the United States and the mandate of the Guam Legislature. Ordering the referendum "bridges" the warring camps on opposite ends of the abortion issue to bring closure, and effectuates the legislative mandate along with *Dobbs's* fundamental returning the question to local Democratic principles and decision making.

When exercising equity jurisdiction, a judge may seek a just result and "mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). The decree may display "flexibility" in pursuit of a practical resolution. *Id.*

In *Hecht Co.*, the Administrator of the 1942 Emergency Price Control Act sought to enjoin a D.C. department store from violating the act by selling goods above the prescribed level. The Supreme Court would not reverse the District Court's decision not to enjoin the overcharges because the District Court found that the department store acted in good faith, that it sought to correct the mistake by devoting more resources to interpreting the

byzantine regulations, and that it offered to donate the overcharges to a local charity. *Id.* at 325-26.

Although courts hesitate to grant affirmative injunctions, injunctions compelling acts are available whenever the circumstances warrant. In *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589 (8th Cir. 1984), the defendant argued that the court should impose a more stringent injunction standard when a party seeks affirmative relief instead of prohibitory relief. *Id.* at 593. The Eighth Circuit Court of Appeals refused, saying that when the status quo is shifting, creating a threat of irreparable harm, courts will not hesitate to issue an affirmative injunction. *Id.* The Eighth Circuit acted to do equity when equity was required. "For every wrong there is a remedy." 20 GCA § 15115 (maxim of jurisprudence).

The situation between Guam's branches of government has been shifting on the abortion issue. The U.S. Supreme Court issued an almost unprecedented repeal of a constitutional right that threw Guam's abortion statutes post P.L. 20-134 into disarray. Two of the three political branches now do not wish to agree to nor be held accountable for any new abortion legislation. The 1990 law, which *Dobbs* reinstituted, called for a referendum. Everyone could agree that the Legislature enacted the 1990 law and that it mandated that even that Legislature's bold statement needed

to be agreed to by the People of Guam through a referendum. The legislation was prophetic of what the *Dobbs* Court would ultimately decide over three decades later. Many views, including those on abortion, could shift over time. And 33 years is a long time. A referendum would subject the 1990 law to current views on abortion and serve as a just resolution to this heated question. Democracy has a way of harmonizing unsettled issues, including those before the Judiciary.

Guam's High Court has the opportunity to timely call for an election on the question of P.L. 20-134 to finally bring to fruition the mandate of the Guam Legislature. The Attorney General is prepared to likewise exercise his prosecutorial discretion to defer prosecution against women who may be seeking an abortion until such time as the referendum occurs.

## B. Allowing the referendum to go forward lets the Democratic process unfold.

A referendum is defined as "[t]he process of referring a state legislative act . . . to the people for final approval by popular vote" or "[a] vote taken by this method." Black's Law Dictionary 1307 (8th ed. 2004). In contrast to laws enacted after being voted on by legislative representatives, a referendum allows the members of the electorate to cast a direct vote on a proposed law.

Other courts have held that "[t]hough the implementation of change through popular referendum does not immunize it from constitutional limitations, the results of the democratic process deserve initial respect in the courts." *Center for Powell Crossing, LLC v. City of Powell, Ohio*, 173 F. Supp. 639, 673-74 (S.D. Ohio 2016) (citing *Hunter v. Erickson*, 393 U.S. 385, 392 (1969); *Coalition to Defend Affirmative Action v. Regents of the Univ. of Mich.*, 701 F.3d 466, 505 (6th Cir. 2012) (Sutton, J., dissenting), *rev'd sub nom Schuette v. BAMN*, 572 U.S. 291 (2014)).

The *Dobbs* Court stated that "the authority to regulate abortion must be returned to the people and their elected representatives." *Dobbs*, 142 S. Ct. at 2279. Holding a referendum now will fulfill the Democratic promise of P.L. 20-134.

## C.  The referendum permits Guam's High Court to exercise judicial restraint.

Conceptually, the judiciary violates the doctrine of the separation of powers when it interferes with the proper functioning of the other two branches of government. "A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). When the judicial

branch exercises judicial restraint, it limits its own powers so that all three branches function without encroaching upon one another's domain.

In *Pinson v. U.S. Dep't of Justice*, 514 F. Supp. 232 (D.D.C. 2021), a plaintiff successfully sued prison officials for violating her first amendment rights under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which "permits a plaintiff to recover [money] damages against individual federal officers for violations of certain constitutional rights even when there is no statute authorizing her claim." *Pinson*, 514 F. Supp. at 239. Defendants sought reconsideration in light of the U.S. Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017).

The *Abbasi* Court held that, under the *ancien regime* of earlier precedents, it would recognize only three types of *Bivens* claims: for violations of rights found in the fourth, fifth and eighth amendments, *id.* at 131-32, because when the judicial branch creates a cause of action against government officials, this implicates separation of powers concerns. "[E]xpanding the *Bivens* remedy is now a disfavored judicial activity", *Abbasi*, 582 U.S. at 167, that is best left to the legislative branch, which is "better positioned than the courts to weigh the host of considerations involved in imposing a new substantive legal liability." *Pinson*, 514 F. Supp. at 240 (citing *Abbasi*, 582 U.S. at 135-36). As a result, the court in

*Pinson* exercised judicial restraint and declined to "insert into th[e political-legislative] sphere a new form of liability." 514 F. Supp. at 242.

Similarly, the Court in this case should exercise judicial restraint and let the people decide the fate of P.L. 20-134, as the Guam Legislature intended, and out of respect for that co-equal Branch of Government, instead of keeping that decision to the Judicial Branch.

## Conclusion

The Organic Act of Guam authorized the Guam Legislature in 1990 to pass P.L. 20-134. As a co-equal branch of government, the Guam Legislature did not commit an *ultra vires* by passing the public law. The Judiciary made an egregious mistake, which highlights the importance of the governmental process to continue unmolested by voiding laws passed by the Guam Legislature *ad infinitum*.

Neither did the Senators impliedly repeal P.L. 20-134 because there was no law in existence with the injunction in effect upon P.L. 20-134 in 1990 before the four subsequent laws. In fact, just the opposite, the subsequently passed laws recognized the 1990 injunction upon P.L. 20-134 and took our laws as close to prohibiting abortions as they could under *Roe v. Wade*.

The proper equitable resolution of this matter is to find that, based upon the legal issues presented in this case, P.L. 20-134 is valid and that the referendum required by the Guam Legislature should be conducted. Our Supreme Court of Guam should uphold the Rule of Law and prevent a few from taking away the People of Guam's fundamental and Democratic right to vote upon this important and divisive question.

Respectfully submitted this 21st day of April, 2023.

OFFICE OF THE ATTORNEY GENERAL

_____
Douglas B. Moylan
Attorney General of Guam

## Certificate of Compliance

This brief complies with the type-volume limitation of Rule 16(a)(7)(B) because this brief contains 10,405 words, excluding the parts of the brief otherwise exempted from Rule 16(a)(7)(B)(iii).

Respectfully submitted this 21st day of April, 2023.

OFFICE OF THE ATTORNEY GENERAL

_____

Douglas B. Moylan
Attorney General of Guam

## Statement of Related Cases

The following case is related to this matter:

(1) *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, Case

No. 1:90-CV-00013 (D. Guam).

Respectfully submitted this 21st day of April, 2023.

OFFICE OF THE ATTORNEY GENERAL

_____
Douglas B. Moylan
Attorney General of Guam

## Certificate of Service

I hereby certify that on April 21, 2023, I electronically filed the foregoing document with the Supreme Court of Guam by using the electronic filing system and that the following parties or their counsel of record will be served electronically:

Leslie Travis
Jeffrey A. Moots
Office of the Governor of Guam
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Attorneys for Petitioner
Honorable Lourdes A. Leon Guerrero, Governor of Guam

Michael F. Phillips, Esq.
Phillips & Bordallo, P.C.
410 West O'Brien Drive
Hagåtña, Guam 96910
Attorneys for Respondent I Liheslaturan Guåhan

Braddock J. Huesman, Esq.
Fisher Huesman, P.C.
Core Pacific Building, Suite 302
545 Chalan San Antonio
Tamuning, Guam 96913
Attorneys for Amicus Curiae Robert Klitzkie

Anita P. Arriola
Arriola Law Firm
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
and
Vanessa L. Williams, Esq.
Law Office of Vanessa L. Williams, P.C.
414 West Soledad Avenue
GCIC Building, Suite 500

Hagåtña, Guam 96910
Attorneys for Amici Curiae William S. Freeman, M.D., *et al.*

The following party will be served by U.S. mail if and when he provides a mailing address:

Timothy J. Rohr, *Pro Se*
Amicus Curiae

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted this 21st day of April, 2023.

_____
Douglas B. Moylan